**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN DOE,** *a pseudonym*, <br><br> Plaintiff, <br><br> *v.* <br><br> **JENNIFER SCHORN,** *District Attorney of Bucks County, in Her Official Capacity*, et al., <br><br> Defendants. | **CIVIL ACTION** <br><br><br> **NO. 23-3252-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                        **January 10, 2024**

Plaintiff brings this action under the pseudonym "John Doe" against the Attorney General of Pennsylvania and the District Attorney of Bucks County in their official capacities. (Doc. No. 1.) He challenges the confidentiality requirement in Pennsylvania's Educator Discipline Act under the First Amendment, arguing that it is unconstitutional as applied to him and on its face. (*Id.*) The parties have filed cross motions for summary judgment. (*See* Doc. Nos. 20, 24, 25.) For the reasons discussed below, Plaintiff's motion is granted in part, the Attorney General's motion is granted, and the District Attorney's motion is denied.

## I.      BACKGROUND

The facts governing this action are undisputed. (*See* Doc. No. 23.)

### A.      The Educator Discipline Act

Pennsylvania's Educator Discipline Act (the "Discipline Act" or the "Act") governs educator misconduct complaints filed with the Department of Education (the "Department") for investigation and, if warranted, discipline. 24 Pa. Cons. Stat. § 2070.9. Once a misconduct complaint is filed, the Department "promptly review[s] it and all other complaints and

information relating to the educator." *Id.* § 2070.9(e). If the facts are not legally sufficient to warrant discipline under the Act, the Department dismisses the complaint and gives written notice of the dismissal to the complainant and to the educator. *Id.* If the facts as alleged are legally sufficient to warrant discipline, the Department provides notice and opens an investigation into the allegations. *Id.* After completing its investigation, the Department may dismiss the misconduct complaint, determine that the school entity has already imposed sufficient punishment, enter into a settlement agreement with the educator, proceed to alternative dispute resolution, or initiate the formal adjudicatory hearing process by filing charges with the Professional Standards and Practices Commission (the "Commission"). *Id.* § 2070.12. The Commission is an "independent body" established by the Act to adjudicate "educator misconduct cases and to create an educator discipline infrastructure."[1] *Whalen v. Dep't of Educ.*, 161 A.3d 1070, 1076–77 (Pa. Commw. Ct. 2017); *see also* 22 Pa. Code § 233.102 (the Commission describing itself as "the body charged with the oversight and enforcement of the educator discipline system").

The Discipline Act mandates that "all information relating to any complaints or any proceeding relating or resulting from such complaints . . . shall remain confidential, unless or until discipline is imposed." 24 Pa. Cons. Stat. § 2070.17b(a); 22 Pa. Code § 233.114(a). That said, the Commission "may order the release of confidential information upon petition of any interested party when it is just and proper." 24 Pa. Cons. Stat. § 2070.17b(e). If the Commission rejects an individual's petition to make a misconduct complaint public, the petitioner may appeal

---

[1] For example, the Act grants the Commission the power to establish procedures for the adjudication of educator misconduct, direct the Department in matters of disciplining educators, and "impose supplemental sanctions or other conditions, corrective action, fines, costs, or fees for violation of this [A]ct." 24 Pa. Cons. Stat. § 2070.5(a)(9), (11.1), (11.2).

the decision to the Pennsylvania Commonwealth Court.  *See Doe v. Governor of Pa.*, 790 F.

App'x 398, 400 (3d Cir. 2019).  Absent authorization from the Commission, however, "any

person who discloses confidential information commits a misdemeanor of the third degree."

*Id.* § 2070.17b(b); *see also* 22 Pa. Code § 233.114(d) ("Under section 17.2 of the act, a person

who releases or gives out information deemed confidential under the [A]ct, without the

authorization of the Commission or as authorized by the [A]ct, commits a misdemeanor of the

third degree, unless the information was known to the person or available independently of the

disciplinary proceeding.").

### B.    Plaintiff's Misconduct Complaint

On June 22, 2023, Plaintiff submitted an educator misconduct complaint against "an

individual employed by a public school district located in Bucks County."  (Doc. No. 23 at ¶¶ 4–

5; Doc. No. 23-1.)  The online form that Plaintiff used to submit the complaint included a

confidentiality notice reminding him that the complaint process is confidential under the Act:

> The educator misconduct complaint process is confidential and any
> unauthorized release of confidential information is a misdemeanor
> of the third degree. *See* 24 P.S. § 2070.17(b). All information
> relating to complaints must remain confidential unless or until
> public discipline is imposed. Thus, the filing of a complaint, the
> Department's investigation of a complaint and the disposition of the
> complaint prior to the imposition of public discipline, as well as any
> and all information learned as a result of the Department of
> Education's investigation, is strictly confidential.

(Doc. No. 23 at ¶ 6; Doc. No. 23-1 at 5.)

On July 26, 2023, the Department sent Plaintiff a letter advising him that it was

dismissing his misconduct complaint and taking no further action because the "allegations set

forth in [the] complaint [we]re not legally sufficient to warrant the imposition of professional

discipline."  (Doc. No. 23 at ¶ 8; Doc. No. 23-2 at 2.)  The letter reminded Plaintiff that "any

unauthorized release of confidential information is a misdemeanor" under the Act.  (Doc. No. 23

at ¶ 9; Doc. No. 23-2 at 2.)

Plaintiff now wishes to publicize the nature of his misconduct complaint and the Department's disposition, but he "fears prosecution if he should publish such information and publicly criticize the Department for its decision not to take action." (Doc. No. 23 at ¶¶ 11–12.) Plaintiff has not petitioned the Commission to request release of the information as authorized by § 2070.17b(e). (*Id.* at ¶ 10.) Instead, on August 23, 2023, he initiated this action under 42 U.S.C. § 1983, arguing that the Act's confidentiality requirement violates the First Amendment as applied to him and on its face. (Doc. No. 1); *see also* 42 U.S.C. § 1983 (providing private cause of action against state actors for violation of the "rights, privileges, or immunities secured by the [Federal] Constitution and laws"). Plaintiff also moved for a preliminary injunction prohibiting Defendants from criminally prosecuting him for violating the Act's confidentiality requirement. (Doc. No. 9.) The Court held status conferences on that motion on September 18 and 21, 2023, and the parties agreed to early resolution of the case via dispositive motions. (*See* Doc. No. 15.) Consistent with that agreement, the parties have filed cross motions for summary judgment. (Doc. Nos. 20, 24, 25.)

## II.    LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the

outcome of the suit under the governing law." *Id.* at 248.  "[A]t the summary judgment stage the judge's function is not [themselves] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  And at "summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and alterations omitted).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008); *see also Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir. 1976) ("It is well settled that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.").  "Courts are permitted to resolve cross-motions for summary judgment concurrently," but "[w]hen doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion." *Hawkins v. Switchback MX, LLC*, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018).

## III.    DISCUSSION

Defendants raise numerous preliminary issues, arguing that Plaintiff's case fails on immunity, jurisdiction, and abstention grounds.  Plaintiff argues that each of Defendants' preliminary attacks fails, and that the Act's confidentiality requirement is unconstitutional as applied to him and on its face under the First Amendment, such that the Court should permanently enjoin its enforcement.  The Court addresses Defendants' immunity, jurisdictional, and abstention arguments in turn, before considering the Act's constitutionality and the appropriateness of a permanent injunction.

## A.    *Sovereign Immunity*[2]

The Court begins with the Attorney General's argument that Plaintiff's claims against her are barred by the Eleventh Amendment and that the exception to immunity described in *Ex parte Young* does not apply.  (Doc. No. 20 at 15.[3])

---

[2] "[C]ourts have repeatedly noted that they may dismiss on immunity grounds before considering standing issues."  *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1017 (6th Cir. 2022) (collecting cases from Seventh, Eighth, and Ninth Circuit).

[3] Although the District Attorney "incorporate[s] by reference," "adopts," and "joins in" the Attorney General's arguments on this issue, the Third Circuit has previously held that Pennsylvania district attorneys are not state officials entitled to Eleventh Amendment immunity.  *See Carter v. City of Philadelphia*, 181 F.3d 339, 347–55 (3d Cir. 1999) (applying factors first described in *Fitchik v. N.J. Transit Rail Operations* and holding that Philadelphia district attorney's office was "not protected by the Eleventh Amendment" (quotation marks omitted)); *Wilson v. City of Philadelphia*, 177 F. Supp. 3d 885, 907–08 (E.D. Pa. 2016) (same).  Some courts, relying on other language in *Carter*, have described Pennsylvania's district attorneys as occupying a "hybrid status":

> [I]n making decisions concerning whether to prosecute and, if so, what charges to bring, and in taking actions in the presentation of a case before a tribunal and other conduct intimately involved with the judicial phases of prosecution, they act as agents of the state; but when called upon to perform tasks beyond 'their strictly prosecutorial functions,' they serve as local policymakers for the county in which they are elected.

*Fogle v. Sokol*, 2:17cv194, 2018 WL 6831137, at *14 (W.D. Pa. Dec. 28, 2018); *see also, e.g.*, *Wallace v. Powell*, Civil Action Nos. 3:09–cv–286, et al., 2010 WL 785253, at *6 (M.D. Pa. Mar. 1, 2010) (recognizing a distinction between when district attorney for Luzerne County performed municipal roles and when he made "direct prosecutorial decisions in the courtroom," at which point "a district attorney is a *state* actor").  *But see Wilson*, 177 F. Supp. 3d at 908 ("Although *Carter* discusses the prosecutorial versus administrative distinction in dicta, it does not reach the issue, finding the application of the *Fitchik* factors dispositive. . . .  The DAO's argument that a prosecutorial versus administrative distinction should be read into the *Fitchik* factors is incorrect and the DAO is not entitled to sovereign immunity.").  The Court need not, however, consider the issue further in this case because the District Attorney has not met her burden of showing that *she* is entitled to immunity.  *See Munchinski v. Solomon*, 618 F. App'x 150, 156–57 (3d Cir. 2015) ("Eleventh Amendment immunity [i]s an affirmative defense, and the party asserting it bears the burden of proving entitlement to it.").  As mentioned, the District Attorney provides no argument on immunity beyond the incorporation of arguments made in the Attorney General's brief.  During oral argument, in response to questions from the Court, counsel for the District Attorney asserted that she is entitled to immunity because she is tasked with prosecuting violations of state law.  But the District Attorney has provided no citation to support this assertion, nor has she discussed *Carter*, the "hybrid status" cases, or the *Fitchik* factors.  *See Brigman v. Schaum*, CIVIL ACTION NO. 1:20-CV-1549, 2021 WL 3821072, at *7 (M.D. Pa. July 27, 2021) ("Defendants in this case have not attempted to analyze this case under the *Fitchik* factors, and therefore have not met their burden of proving they are entitled to immunity under the Eleventh Amendment.").  Accordingly, the Court analyzes only whether the Attorney General is immune from suit.

"Generally, states are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).  Because an official capacity suit against a state official is really a suit against the state, "[a] state official sued in an official capacity is generally entitled to immunity under the Eleventh Amendment." *Poplawski v. Vilarino*, CIVIL ACTION NO. 21-3084, 2022 WL 717277, at *2 (E.D. Pa. Mar. 10, 2022); *see also Ex parte Young*, 209 U.S. 123, 150 (1908) (recognizing that in a previous case, the Court found immunity precluded a case "against the governor of Georgia as governor," where "the demand was made upon him, not personally, but officially," meaning the "state might be considered the party on the record . . . and therefore the suit could not be maintained").  The Supreme Court has long recognized a limited exception to this immunity, however, when the state official is named as a defendant in their official capacity in a suit for prospective injunctive relief to prevent a continuing violation of federal law.  *Ex parte Young*, 209 U.S. at 157; *see also Whole Woman's Health*, 595 U.S. at 39  ("To be sure, in *Ex parte Young*, this Court recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law."); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002) ("[A] person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the 'legal fiction' of *Ex Parte Young*, despite the text of the Eleventh Amendment.").  Plaintiff argues that the *Ex parte Young* exception applies in this case.  (Doc. No. 30 at 16–17.)

"In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." *Verizon Md, Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). Here, there is no dispute that Plaintiff, who requests a permanent injunction and declaratory judgment, seeks prospective relief. *See id.* (finding declaratory relief could be sought under *Ex parte Young* exception where it "adds nothing to the prayer for injunction"). The only question is whether the Attorney General herself is engaged in an "*ongoing violation* of federal law." *Id.* (emphasis added).

It is not enough to show that a state official is charged with defending the constitutionality of the state's laws; instead, the official must have "some connection with the enforcement of the act" and have demonstrated a willingness to exercise that duty. *Ex parte Young*, 209 U.S. at 155–57; *see also, e.g.*, *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) ("*Ex parte Young* does not require that the state official have a special connection to the unconstitutional act or conduct. But it does require that the state official have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." (cleaned up)).

The Attorney General argues that *Ex parte Young* is inapplicable because the Discipline Act does not charge her with enforcement of its the confidentiality requirement and because she has neither enforced nor threatened to enforce that requirement against Plaintiff. (Doc. No. 20 at 15–19.) She suggests that Plaintiff should have, instead, sued the Commission, as that is the administrative body charged by the Act with ensuring confidential information remains confidential. (*Id.*) Plaintiff disagrees with this interpretation, arguing that "the Commission has no authority to prosecute criminal violations of the Act," and therefore, "suit properly lies against the . . . Attorney General." (Doc. No. 30 at 17.)[4]

---

[4] Because the Commission is not currently named as a defendant in this action, the Court makes no ruling on its ability to enforce the Act's confidentiality requirement in ways apart from bringing a

A review of the Act shows that it does not explicitly authorize the Attorney General to enforce the confidentiality requirement.  *See generally* 24 Pa. Cons. Stat. § 2070.17. Accordingly, the Court considers whether, as a matter of general Pennsylvania law, the Attorney General could prosecute Plaintiff for violating the Act.  *See Ex parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."); *Whole Woman's Health*, 595 U.S. at 45–46 (finding individual defendants fell "within the scope of *Ex parte Young*'s historic exception to state sovereign immunity" because each "individual[ ] is an executive licensing official who may or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code, including S.B. 8").

In Pennsylvania, the Attorney General's authority to prosecute criminal cases is prescribed by the Commonwealth Attorneys Act.  *Commonwealth v. Carsia*, 517 A.2d 956, 956–57 (Pa. 1986); *id.* at 958 ("[The Attorneys] Act made it clear that the powers of the state Attorney General are no longer an emanation from some bed of common law precepts, but are now strictly a matter of legislative designation and enumeration.").  Section 201(a) of the Attorneys Act states that "[the] Attorney General shall exercise such powers and perform such duties" as set forth within that statute.  71 Pa. Cons. Stat. § 732-201(a).  Section 205 then lists the

---

criminal prosecution.  *Compare* 24 Pa. Cons. Stat. § 2070.5(11.2) (listing the Commission's powers as including the authority to "impose sanctions or the other conditions, corrective action, fines, costs or fees for violations of this act"), *with Doe v. Dep't of Educ.*, No. 2050 C.D.2009, 2010 WL 9514489, at *6 (Pa. Commw. Ct. Aug. 18, 2010) ("[T]he only specific reference to a penalty for violation of [the confidentiality provision] is set forth in [§ 2070.17b(e)], which provides only that violators are guilty of a misdemeanor of the third degree.  Since Doe has not established that there was a violation of [the confidentiality provision] and, even if there were, that the Commission was authorized to dismiss pending charges as a sanction therefore, the Commission did not err by denying Doe's motion to dismiss on that basis.").

categories of criminal cases over which the Attorney General has prosecutorial authority, four of

which are relevant here:

> (3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

> (4) The Attorney General may petition the court having jurisdiction over any criminal proceeding to permit the Attorney General to supersede the district attorney in order to prosecute a criminal action or to institute criminal proceedings. . . . Supersession shall be ordered if the Attorney General establishes by a preponderance of the evidence that the district attorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion.

> (5) When the president judge in the district having jurisdiction of any criminal proceeding has reason to believe that the case is a proper one for the intervention of the Commonwealth, he shall request the Attorney General to represent the Commonwealth in the proceeding and to investigate charges and prosecute the defendant. . . .

> (6) Criminal charges investigated by and referred to him by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a duty to enforce its provisions.[5]

*Id.* § 732-205(a).[6]  Plaintiff argues that these provisions are enough to show the Attorney

General has "some connection" to the Act's enforcement.  (Doc. No. 30 at 16–17.)  The Court

disagrees.

     In the context of this case, where no one has sought the Attorney General's assistance in

---

[5] As to the sixth category, the Attorney General has "concurrent prosecutorial jurisdiction with the district attorney."  *Id.* § 732-205(b).

[6] By contrast, the district attorney for each county "has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case."  *Commonwealth v. Stipetich*, 652 A.2d 1294, 1295 (Pa. 1995) (quoting *Commonwealth v. DiPasquale*, 246 A.2d 430, 432 (Pa. 1968)); *see also* 16 Pa. Cons. Stat. § 4402(a) ("The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth . . . .").

prosecuting Plaintiff, the authority given to the Attorney General under these subsections is too attenuated to trigger *Ex parte Young*'s narrow exception to sovereign immunity.  *See Diamond v. Pa. State Educ. Ass'n*, 399 F. Supp. 3d 361, 381 (W.D. Pa. 2019) ("Attorney General Shapiro has no connection with the enforcement of Section 575.  There is no enforcement role for the attorney general in the penalty provisions of Section 575. . . .  No provisions of [the Commonwealth Attorneys] Act would give the attorney general the authority to enforce Section 575 under the circumstances of this case. . . .  [N]one of the provisions of 71 Pa. Stat. § 732-205 give the attorney general the power to initiate a prosecution based on Section 575's penalty provisions, at least without a request from a district attorney or permission from a court."); *cf. White Hat v. Landry*, 475 F. Supp. 3d 532, 549 (M.D. La. 2020) ("The Court agrees that absent some showing that the Attorney General has been asked to assist in the criminal prosecution of the Statute, or has instituted, prosecuted, or intervened for cause when authorized by a court having original jurisdiction over the criminal prosecution, the general obligation of the Attorney General as the chief legal officer of Louisiana in prosecuting cases under the statute is indirect and remote.  Therefore, the Court finds that because Plaintiffs have not alleged sufficient facts to show that the Attorney General has more than a scintilla of a connection with the enforcement of or prosecution under La. R.S. 14:61, the Attorney General is not a proper defendant under the *Ex Parte Young* exception to sovereign immunity.").

Considering the third, fourth, and fifth subsections of § 205, if the Court were to find that the Attorney General has some connection to the Act's enforcement simply because she *could* be drawn into a local prosecution at the request of the district attorney, the state court, or the president judge, then it is hard to imagine a case where she would not be subject to suit simply because the plaintiff challenged a state statute providing for criminal sanctions as violative of

11

federal law.  *Cf. 1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993)

("General authority to enforce the laws of the state is not sufficient to make government officials

the proper parties to litigation challenging the law.").[7]  Indeed, if the Court were to adopt

Plaintiff's broad reading of *Ex parte Young* here, we would be subjecting the Attorney General to

suit even though her office "has never prosecuted anyone for violating the Confidentiality

provision."  (Doc. No. 20 at 18 (citing 71 Pa. Cons. Stat. § 732-205(a)(3))).[8]

Similarly, as to § 205's sixth subsection, the Court is not persuaded that the Attorney

General has some connection to the Act's enforcement simply because she has the authority to

prosecute criminal charges that are investigated by and referred to her "by a Commonwealth

agency arising out of enforcement provisions of the statute charging the agency with a duty to

enforce its provision."  71 Pa. Cons. Stat. § 732-205(a)(6).  Even assuming that the phrase

---

[7] There appears to be a split among Circuits about whether an attorney general can be subject to suit when the district attorney, not the attorney general, has primary prosecutorial authority.  *Compare 281 Care Committee v. Arneson ("Care Committee I")*, 638 F.3d 621, 632 (8th Cir. 2011) (finding "sufficient connection between the attorney general and the enforcement of section 211B.06" because, among other reasons, "the attorney general may, upon request of the county attorney assigned to a case, become involved in a criminal prosecution of section 211B.06"), *with Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (finding state attorney general had "no connection to the enforcement of the statutes" because "Ohio law delegates the enforcement of the challenged statutes to local prosecutors, not the Attorney General").  Although the Third Circuit has not directly addressed this issue, its holdings in this area are in line with the Sixth Circuit's, and other district courts in this Circuit have found the Pennsylvania Attorney General's powers too attenuated in this context.  Accordingly, the Court finds the *Deters* line of cases to be the more persuasive and agrees that the Attorney General does not have "some connection" to the Act's enforcement, simply because a local district attorney could request the Attorney General's assistance in a criminal prosecution.

[8] During oral argument, Plaintiff suggested that the Court could find the Attorney General has prosecutorial authority because she has refused to disavow prosecution in this case.  Although that argument has some superficial appeal, it does not square with *Ex parte Young*'s mandate that the Attorney General must, as a matter of law, have authority to enforce the Act's prohibition.  *See Ex parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."); *Whole Woman's Health*, 595 U.S. at 45–46 (applying *Ex parte Young* exception where each "individual[ ] is an executive licensing official *who may or must take enforcement actions* against the petitioners if they violate the terms of Texas's Health and Safety Code, including S.B. 8" (emphasis added)).

"Commonwealth agency" encompasses the Commission[9] and that the Act charges the

Commission "with a duty to enforce its provision[s]," any prosecution *by the Attorney General* is

too attenuated since there is no evidence that the Commission has referred Plaintiff (or anyone

else) to the Attorney General for prosecution.  (*See* Doc. No. 20 at 18 n.7 ("[T]he Commission

has never asked the Attorney General to prosecute someone for violating the Confidentiality

provision.").)

Plaintiff argues that the Middle District of Pennsylvania's opinions in *Stilp v. Contino*

support his position that the Attorney General is charged with the Act's enforcement.  *See* 743 F.

Supp. 2d 460 (M.D. Pa. 2010); 629 F. Supp. 2d 449 (M.D. Pa. 2009).  *Stilp* considers the

confidentiality provision of Pennsylvania's Public Official and Employee Ethics Act.  743 F.

Supp. 2d at 462–63.  Like the provisions of the Discipline Act challenged in this case, the Ethics

Act creates an independent agency—the State Ethics Commission—to investigate complaints

alleging violations of the Ethics Act.  The Ethics Act likewise subjects complainants to a

confidentiality requirement, which, with certain exceptions, prohibits complainants from

"disclos[ing] or acknowledg[ing] to any other person any information relating to a complaint,

preliminary inquiry, investigation, hearing or petition for reconsideration which is before the

---

[9] The phrase "Commonwealth agency" is defined as "[a]ny executive agency or independent agency."  71 Pa. Cons. Stat. § 732-102.  "Executive agency" is, in turn, defined as "[t]he Governor and the departments, boards, commissions, authorities, and other officers and agencies of the Commonwealth government, but the term does not include any court or other officer or agency of the unified judicial system, the General Assembly and its officers and agencies, or any independent agency."  *Id.*  The term, "independent agency," refers to a list of specific departments and commissions, which list does not include either the Department of Education or the Professional Standards and Practices Commission.  *See id.*  Although no party was willing to offer argument on this issue when prompted by the Court, the Commission, which consists of "thirteen members appointed by the Governor with the advice and consent of a majority of the members elected to the Senate," would seem to qualify as an "executive agency," and thus, a "Commonwealth agency."  24 Pa. Cons. Stat § 2070.3(a); *cf. 1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 112 (3d Cir. 1993) (recognizing the Department of Education is a commonwealth agency).

commission."  65 Pa. Cons. Stat. § 1108(k).  If someone violates this provision, the Ethics

Commission is explicitly authorized to refer the violation "to the state attorney general for

prosecution."  *Stilp*, 743 F. Supp. 2d at 463–64 (citing 65 Pa. Cons Stat. § 1107(13)); *Stilp*, 629

F. Supp. 2d at 454 & n.3 (noting that the "Attorney General's office is ultimately responsible for

criminal enforcement of the Act," and the "Commission has no criminal enforcement

jurisdiction").

In *Stilp*, the Ethics Commission opened an investigation against the plaintiff for violating

the confidentiality provision after the plaintiff disclosed to the media that he intended to file an

ethics complaint.  743 F. Supp. 2d at 464.  The commission and the plaintiff ultimately entered a

consent decree resolving the dispute, but the plaintiff, wanting to disclose complaints in the

future, challenged the confidentiality provision as violating the First Amendment.  *Id*.  The

Middle District found, without discussion, that suit was proper against the commission's

executive director and the attorney general because both were "charged with enforcement of the

contested measure."  *Id.* at 467.

Plaintiff argues that because the district court in *Stilp* ultimately entered an injunction

against *both* the executive director for the Ethics Commission and the Attorney General, suit is

also proper against the Attorney General in this case.  (Doc. No. 30 at 16–17.)[10]  The Court is not

persuaded.  Although the Ethics Act and the Discipline Act have similar confidentiality

provisions, the enforcement provisions differ.  Among other things, the commission created by

the Ethics Act was permitted to make recommendations to law enforcement officials for criminal

---

[10] The Attorney General also relies on *Stilp*, arguing that it shows the members of the
Commission, not the Attorney General, are the only appropriate Commonwealth defendants.  (*See* Doc.
No. 20 at 15.)  But as Plaintiff notes, the court in *Stilp* ultimately entered an injunction against the
Attorney General as well as the members of the Ethics Commission.  *See* 743 F. Supp. 2d at 467.

prosecution, whereas the Commission created by the Discipline Act has no such powers. *Compare* 65 Pa. Cons Stat. § 1107(13) (authorizing the commission created by the Ethics Act to "issue findings, reports and orders relating to investigations initiated pursuant to section 1108 [including the confidentiality provision], which set forth the alleged violation, findings of fact and conclusions of law" and which orders "may include recommendations to law enforcement officials"), *and id.* § 1107(15) (authorizing the commission to "[m]ake recommendations to law enforcement officials either for criminal prosecution or dismissal of charges arising out of violations" of the Ethics Act), *with* 24 Pa. Cons. Stat. § 2070.5(11.2) (listing the Commission's powers under the Discipline Act as including the authority to "impose sanctions or the other conditions, corrective action, fines, costs or fees for violations of this act").

In addition, the facts underlying *Stilp* and this case differ.  There, the plaintiff had violated the Ethics Act's confidentiality provision in the past, which led the commission to investigate his conduct and the parties to enter a consent decree.  *See* 743 F. Supp. 2d at 464. Those facts suggested that the plaintiff would have been subject to enforcement in the future if he made similar disclosures.  No similar investigation or enforcement action was previously pursued in this case.  (*See* Doc. No. 20 at 18 (asserting that the Attorney General's office has never prosecuted a violation of the Act's confidentiality provision).)  Finally, and most importantly, of the two district court opinions and one Third Circuit opinion in *Stilp*, only *two sentences* of analysis are dedicated to *Ex parte Young*:

> To enjoin application of an unconstitutional state statute under § 1983, a plaintiff must bring suit against those officials charged with enforcement of the contested measure. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 & n.14 (1985); *Ex Parte Young*, 209 U.S. 123, 153–61 (1908). Accordingly, Stilp identifies Contino and Corbett as responsible for enforcement of § 1108(k) of the Act, and he seeks injunctive relief to conform defendants' official conduct to the contours of the First Amendment.

743 F. Supp. 2d at 465; 629 F. Supp. 2d at 458 (same); *Stilp v. Contino*, 613 F.3d 405, 406 (3d Cir. 2010) (providing no discussion of immunity or *Ex parte Young*).  Given the complexity of the *Ex parte Young* doctrine, this limited discussion is of minimal persuasive value.

Because the Attorney General lacks "some connection" to the enforcement of the Discipline Act's confidentiality requirement, she is entitled to immunity and summary judgment is granted in her favor.

### B.     Jurisdiction

Having dismissed the Attorney General, the Court considers the parties' remaining arguments for summary judgment on the claims asserted against the District Attorney.  The District Attorney first argues that this Court cannot reach the constitutional question in this case because Plaintiff lacks standing, his claims are not ripe, and he failed to exhaust his administrative remedies.  (Doc. No. 20 at 10 n.2; Doc. No. 25 at 9–13.)  The Court addresses each issue in turn.

### 1.     <u>Standing</u>

An individual has standing when he or she satisfies the "irreducible constitutional minimum of standing."  *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 152 (3d Cir. 1999) (quoting *Lujan*, 504 U.S. 560).  This requirement has three parts:  (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) "a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan*, 504 U.S. at 560).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The District Attorney argues that Plaintiff has failed to satisfy the injury in fact requirement.  (Doc. No. 18 at 10–11;

Doc. No. 25 at 9.)

For injury in fact, Plaintiff must show that the Act's confidentiality requirement has caused or will cause him an injury that is both "concrete and particularized" and "actual or imminent." *Susan B. Anthony List*, 573 U.S. at 157–58 (quoting *Lujan*, 504 U.S. at 560). In the context of a pre-enforcement challenge to a statute limiting speech, "the threatened enforcement of a law" itself can rise to the level of an Article III injury, and the individual "subject to such a threat" need not suffer "an actual arrest, prosecution, or other enforcement action" as a "prerequisite to challenging the law." *Id.* at 158; *see also Babbitt*, 442 U.S. at 298 ("[O]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." (quotation marks omitted)). Instead, an individual "satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298); *see also Laird v. Tatum*, 408 U.S. 1, 11 (1972) ("In recent years this Court has found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights. . . . [I]n each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.").

Plaintiff satisfies each element here. Plaintiff wishes to publicize the nature of his misconduct complaint, disclose the Department's letter dismissing that complaint, and criticize the Department's refusal to take further action. (Doc. No. 23 at ¶¶ 11–12); *see Schrader v. Dist.*

*Att'y of York Cnty*, 74 F.4th 120, 125 (3d Cir. 2023) (finding plaintiff's intent to publish documents in her possession was "specific and not conjectural or hypothetical" (quotation marks omitted)). This conduct is "affected with a constitutional interest," namely Plaintiff's free speech rights under the First Amendment, and is proscribed by § 2070.17b(a). *See Schrader*, 74 F.4th at 125 ("[B]y sharing the Facebook documents, Schrader intends to criticize the government. She certainly has a constitutional interest in doing that."). There is also a credible threat of prosecution under the Act because the Act states that any violation results in criminal sanctions. *See* 24 Pa. Cons. Stat. § 2070.17b(b). At each step of the complaint process, the Department reiterated the confidentiality requirement and potential penalty to Plaintiff. (Doc. No. 23-1 at 5; Doc. No. 23-2 at 2.) Even in this litigation, the District Attorney has refused to disclaim any intent to prosecute, further suggesting that the threat is live and the potential injury "concrete." *Cf. Schrader*, 74 F.4th at 125 (finding "credible threat of prosecution" where the district attorney had prosecuted other individuals under the statute and "[al]though the DA has suggested that [s]he would not prosecute Schrader for just sharing the Facebook documents, he has not disavowed that possibility").

Focusing on this final requirement, the District Attorney maintains that Plaintiff has failed to show a plausible threat of prosecution because there is no evidence that the Bucks County District Attorney's Office knew about Plaintiff's misconduct complaint or that it has threatened or pursued criminal prosecution against Plaintiff. (Doc. No. 25 at 9–10.) But as discussed, in the First Amendment context, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List*, 573 U.S. at 157–58. A plaintiff need show only that a threat of prosecution is "credible." *Id.* Here, no party disputes that Plaintiff's publication of the Department's disposition of the Complaint would violate

§ 2070.17b(a) and the District Attorney could prosecute him criminally for that violation.  *See* 24 Pa. Cons. Stat. § 2070.17b(a), (b); 16 Pa. Cons. Stat. § 4402(a).

For similar reasons, the Court rejects the District Attorney's assertion, raised during oral argument, that Plaintiff cannot show a credible threat of prosecution in this case because there is no evidence that any individual has *ever* been charged criminally for violating the Act's confidentiality requirement.  Although "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical," *Susan B. Anthony List*, 573 U.S. at 164, a history of enforcement is *not* a necessary precondition to showing a credible threat of enforcement.  Instead, a history of past enforcement is just one of "several signs" that the threat exists.  *Nat'l Shooting Sports Found. v. Att'y. Gen. of N.J.*, 80 F.4th 215, 220 (3rd Cir. 2023) ("Some [traditional] signs [of a threat of enforcement] involve past enforcement; others concern the enforcer.").  When a law has not been enforced in the past, a plaintiff may show a threat of enforcement by pointing to "enforcer-related signs," including whether the prohibition is enforceable by private parties and "what the enforcer has said about enforcement plans."  *Id.*  For example, in *National Shooting Sports Foundation*, the Third Circuit found it telling that the New Jersey Attorney General had disavowed any intent to prosecute the plaintiff.  *See id.* at 221.  The court also emphasized that under the Attorney General's interpretation of the relevant statute, the plaintiff's conduct was not prohibited—an interpretation which the plaintiff had failed to rebut.  *Id.* ("Here . . . the Foundation never explains how simply making, marketing, or selling guns will inevitably trigger this Law.").

Here, unlike in *National Shooting Sports Foundation*, the District Attorney has not disavowed an intent to prosecute Plaintiff, nor is there any dispute that Plaintiff's intended conduct is prohibited by the Act.  Given these facts, the Court finds Plaintiff has demonstrated a

credible threat of enforcement.  *See id.*; *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 856 (3d Cir. 2022) (finding the plaintiff faced "a substantial threat of future enforcement" where the "Attorney General—the person charged with enforcing the statute—has already articulated that [the plaintiff] is subject to the prohibitions in the statute.  Based on his interpretation, we have no reason to believe that the Attorney General would decline to enforce [the statute] against [the plaintiff]").

Finally, the District Attorney argues that Plaintiff cannot show a threat of enforcement *at the hands of her office* because there is no evidence that Plaintiff "desires to speak or disclose the contents of the misconduct report in *Bucks County*."  (Doc. No. 25 at 10.)  Plaintiff responds that the Court should make the "reasonable inference that Doe, who has sued the Bucks County District Attorney, while living in Bucks County, and wishing to speak about a complaint filed against an employee of a Bucks County school district, in fact wants to speak in Bucks County." (Doc. No. 31 at 13.)  The Court agrees.  Indeed, it is not only reasonable to infer that Plaintiff intends to violate the Act in Bucks County; Bucks County is the *only* locale reasonably triggered by the evidence in this case.  *See Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (explaining that at summary judgment, the court must "view the record and draw inferences in a light most favorable to the non-moving party" (quotation marks omitted)).

For those reasons, the Court finds that Plaintiff has established an injury in fact.  He also "easily meets the other two requirements for standing" because his "credible threat of prosecution is traceable to the [District Attorney]'s enforcement of the Law, and enjoining enforcement would redress that injury."  *Schrader*, 74 F.4th at 125.  Accordingly, Plaintiff has standing to bring his First Amendment challenge.

## 2.  <u>Ripeness</u>

Next, the District Attorney argues that Plaintiff's claims are not ripe for review.  (Doc.

20

No. 25 at 10–11.)

> a.  *Legal Standard*

Like standing, the ripeness doctrine ensures that federal courts entertain only those cases which contain a live "case or controversy."  *See Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) ("The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief.  In some circumstances the ripeness requirement is drawn from Article III limitations on judicial power and in others from prudential limitations." (quotation marks and citations omitted)).  "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and [it] counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."  *Id.* at 433 (citations omitted).

As with standing, the ripeness doctrine is relaxed in the First Amendment context. *Peachlum*, 333 F.3d at 434.  "The courts have repeatedly shown solicitude for First Amendment claims because of a concern that, even in the absence of a fully concrete dispute, unconstitutional statutes or ordinances tend to chill protected expression among those who forebear speaking because of the law's very existence."  *Id.* at 434–35.  This is particularly so in the pre-enforcement context, where an individual may choose to "comply with an illegitimate statute rather than be subjected to prosecution."  *Id.* at 435.

The Third Circuit has adopted a three-part test, referred to as the "*Step-Saver* test," for determining when a pre-enforcement challenge is sufficiently ripe to warrant review.  *See Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (describing test first adopted in *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)).  First, the court must consider the "adversity of the interest of the parties" and determine whether there is a "substantial threat of real harm" that will remain "real and

immediate throughout the course of the litigation." *Id.* (cleaned up). Second, the litigation must be "based on a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quotation marks omitted). Third, the court must consider the "practical help, or utility, of [a] judgment" in the case. *Id.* at 1463 (quotation marks omitted). The District Attorney argues that Plaintiff fails at each prong of the *Step-Saver* test. (Doc. No. 25 at 11–12.)

### b.    Adverse Interest

First, the District Attorney argues that she is "not even in a position to have an adverse legal interest to the Plaintiff" because "Plaintiff has failed to establish . . . that [the District Attorney's Office] had knowledge regarding the allegations contained in Plaintiff's misconduct report and/or Complaint." (*Id.* at 11.) This argument fails. Although the District Attorney was unaware before this lawsuit that Plaintiff intends to publish the disposition of his misconduct complaint in violation of § 2070.17b(a), there is no dispute that the District Attorney will be able to prosecute Plaintiff under § 2070.17b(b) if Plaintiff acts on that intent. And as stated above, the District Attorney has refused to disclaim any intent to prosecute Plaintiff.

This is enough to show a "real and substantial" threat of prosecution, such that the District Attorney and Plaintiff have adverse interests. *See Peachlum*, 333 F.3d at 435 ("[I]n cases involving fundamental rights, even the remotest threat of prosecution, *such as the absence of a promise not to prosecute*, has supported a holding of ripeness where the issues in the case were 'predominantly legal' and did not require additional factual development." (emphasis added)); *Presbytery of N.J. of Orthodox Presbyterian Church*, 40 F.3d at 1466–68 (finding first *Step-Saver* factor satisfied when the plaintiff alleged that he "plans to engage in conduct that has a potential for violating the LAD's ban on incitement of prohibited discrimination . . . by boycott

or otherwise," and there was a "credible threat of enforcement against him" because the state "refused to forswear his prosecution if he were to step off the pulpit and engage in the activities he alleges his First Amendment right to freedom of expression protects"); *cf. Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (finding that when the petitioner had "been twice warned to stop the handbilling that he claim[ed was] constitutionally protected and ha[d] been told by police that if he again handbill[ed] at the shopping center and disobey[ed] a warning to stop he [would] likely be prosecuted," it was "not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claim[ed] deters the exercise of his constitutional rights").

*c.*     *Conclusiveness*

Second, the District Attorney argues that she does not have a "real and substantial" controversy with Plaintiff that would result in a "decree of a conclusive character" from this Court because Plaintiff has failed to establish that he would be subject to enforcement of the Act by the District Attorney of Bucks County.  (Doc. No. 25 at 11–12.)

In *Presbytery*, the Third Circuit found the second *Step Saver* factor satisfied because the court could "conclusively determine the largely legal issues at stake" in the plaintiff's First Amendment pre-enforcement challenge.  40 F.3d at 1468–69.  The court explained that the plaintiff's "claims would not substantially change in future litigation, that [they] were appropriate to raise the issues at bar[,] and that [they] would be subject to enforcement of the challenged act if it were implemented."  *Id.* at 1468.  Given these facts, the court held that the plaintiff's controversy was "real and substantial" and not merely a hypothetical challenge incapable of a conclusive determination.  *Id.* at 1468–69.

So too here.  As the parties have conceded since this litigation began, the issues at stake are largely legal, such that factual development would add little if anything to Plaintiff's

23

challenges to the constitutionality of the Act's confidentiality requirement.  Indeed, factual

development would add virtually nothing to Plaintiff's facial challenge of the Act.  *See id.* at

1468.  Moreover, Plaintiff is poised to release the disposition of the misconduct complaint that

he submitted to the Department.  Other than the initiation of an enforcement action against him,

it is unclear how the material facts would change—even in connection with his as applied

challenge—if the court dismissed the action as unripe and simply waited for him to violate the

Act.  *See id.* at 1469 ("Even if this case were finally dismissed as not ripe, Reverend Cummings

or others who share his beliefs could in the future easily assert substantially similar facial attacks

on the LAD in their individual capacities.  Such claims would most likely parallel those claims

already presented in the present action, and as such it is unlikely that there would be any change

in the substance or clarity of the challenges to the LAD.").

Finally, if Plaintiff acts on his intent and publishes the contents of his misconduct

complaint and the Department's disposition letter, "he would appear to be exposed to a threat of

enforcement."  *Id.*  The District Attorney argues that Plaintiff's challenge fails at this prong

because Plaintiff has not shown that he "intends to disclose the misconduct complaint or

otherwise publish the contents of the response from the Department of Education in *Bucks*

*County*," and absent such a showing, the District Attorney would have no jurisdiction to

prosecute Plaintiff.  (Doc. No. 25 at 11–12.)  The Court rejects this argument for the same reason

it rejected it in connection with standing.  Although Plaintiff has not stated, "I intend to violate

the statute *in Bucks County*," that is the only reasonable inference to be drawn from the

undisputed facts.

Accordingly, the second *Step-Saver* factor is also satisfied.

### d.      Utility of Judgment

Under the final factor, the District Attorney argues that Plaintiff cannot show any utility

from a judgment in this case because there is no suggestion that a judgment in Plaintiff's favor "would cause real-world behavioral modification."  (Doc. No. 25 at 12); *see Presbytery*, 40 F.3d at 1469 ("The final *Step–Saver* factor focuses on the utility served by current entry of a judgment resolving the facial challenge to the Act.  In this inquiry we consider whether the parties' plans or actions are likely to be affected by a declaratory judgment." (quotation marks omitted)).  The District Attorney asserts that a ruling would have no real-world effect because the Commonwealth of Pennsylvania has not "asked the [District Attorney] to investigate or prosecute the Plaintiff in any fashion," and any prosecution, if necessary, "should originate with the Attorney General."  (*Id.*)  These arguments fail.

For one, this is a pre-enforcement challenge, so it is immaterial that the Commonwealth has not *yet* asked the District Attorney to prosecute Plaintiff.  Indeed, Plaintiff has not done anything to warrant investigation or prosecution at this time.  Second, the Court is not convinced by the District Attorney's assertion that the Attorney General is the true prosecutorial authority—especially given the limitations on the Attorney General's prosecutorial authority described above.  *See supra* Section III.A. Third, at no point in this litigation has the District Attorney disclaimed an intent to prosecute Plaintiff for violating the Act, further suggesting that an adjudication in Plaintiff's favor would cause "real-world behavioral modification."  *See Presbytery*, 40 F.3d at 1469–70 ("It appears to us that entry of a declaratory judgment deciding the free speech issues the LAD amendments pose in the instant case would be useful to the parties and others who could be affected.  Although Cummings alleges that he will engage in allegedly prohibited conduct in the future, we assume his willingness to do so is likely to be affected by resolution of this action.  Similarly, the state's effort to enforce certain portions of the amended LAD will be affected by the resolution of this litigation.").

\*      \*      \*

Because Plaintiff satisfies each prong of the *Step-Saver* test, the matter is ripe and adjudication at this stage is appropriate.

### 3.  Exhaustion

Next, the District Attorney argues that Plaintiff has failed to exhaust administrative remedies available under the Act—i.e., asking the Commission for permission to disclose confidential information—and therefore, Plaintiff cannot seek a judicial remedy from this Court. (Doc. No. 25 at 12–13.)  Plaintiff responds that he is not required to exhaust administrative remedies before bringing an action under § 1983, and in any event, the administrative procedure outlined by § 2070.17b(e) is unconstitutional.  (Doc. No. 30 at 9–10, 12 n.2, 16; Doc. No. 31 at 15.)

Plaintiff is correct that he need not exhaust state judicial or administrative remedies before filing suit under § 1983.  *See, e.g.*, *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 671 (1963) ("We have previously indicated that relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy."); *Hochman v. Bd. of Educ. of Newark*, 534 F.2d 1094, 1097 (3d Cir. 1976) ("We therefore conclude in this case, where Hochman's [§] 1983 action charges the defendant with retaliating against him for his exercise of First Amendment rights, that *McNeese* and its progeny do not require exhaustion.  In so concluding we do no more than adhere to the repeated and unqualified expressions of the Supreme Court that we have not required exhaustion of state judicial or administrative remedies in suits under [§] 1983.  When appropriate federal jurisdiction is invoked alleging violation of First Amendment rights, as Hochman does here, we may not insist that he first seek his remedies elsewhere no matter how adequate those remedies may be." (citation omitted)); *N.U. ex rel. M.U. v. Mansfield Twp. Sch. Dist.*, Civil Action No. 19-14894,

2022 WL 18024205, at *4 (D.N.J. Dec. 30, 2022) ("[C]ontrary to Defendants' blanket assertions

otherwise, a plaintiff need not exhaust any state or federal administrative remedies before

bringing claims under . . . § 1983.").

Because the Court agrees that exhaustion is not a precondition to Plaintiff's bringing this

§ 1983 action, we need not decide the constitutionality of the administrative procedure provided

by § 2070.17b(e).

*　　　*　　　*

For the reasons discussed above, the Court rejects the District Attorney's jurisdictional

challenges and finds that Plaintiff has standing, his First Amendment claims are ripe, and

exhaustion of administrative remedies is not a precondition to bringing suit.

### C.    Abstention

Next, the District Attorney argues that even if this Court has jurisdiction, we should

nevertheless abstain from deciding the issues raised in this case under the principles set out by

the Supreme Court in *Younger v. Harris* and *Railroad Commission of Texas v. Pullman, Co*.

(Doc. No. 20 at 10–13; Doc. No. 25 at 14–15.)  The Court addresses each argument in turn.

### 1.    *Younger* **Abstention**

We begin with *Younger* abstention.  In *Younger v. Harris*, the district court enjoined a

state court criminal proceeding, and the Supreme Court reversed, finding that the lower court's

injunction violated a "national policy forbidding federal courts to stay or enjoin pending state

court proceedings except under special circumstances."  401 U.S. 37, 41 & n.2 (1971) (also

holding that "declaratory relief is . . . improper when a prosecution involving the challenged

statute is pending in state court at the time the federal suit is initiated").  *Younger* abstention is an

exception to the general rule that a "federal court's obligation to hear and decide a case is

virtually unflagging."  *PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Develop.*, 978

27

F.3d 871, 882 (3d Cir. 2020) (quoting *Spring Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 77

(2013)).  The doctrine serves the "dual-purpose" of (1) promoting comity, and (2) restraining

equity jurisdiction from operating "when state courts provide adequate legal remedies for

constitutional claims and there is no risk of irreparable harm."  *Id.*

    *Younger* abstention applies only "when certain types of state proceedings are ongoing at

the time a federal case is commenced."  *Id.*  This includes pending state criminal prosecutions,

civil enforcement proceedings, or "civil proceedings involving orders in furtherance of the state

courts' judicial function."  *Id.* (quoting *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138

(3d Cir. 2014)); *see also Spring Commc'ns., Inc.*, 571 U.S. at 78 (holding that "these three

'exceptional' categories . . . define *Younger*'s scope").  The District Attorney argues that this

action involves the third category,[11] asserting that *Younger* abstention is appropriate here

because a ruling from this Court would interfere with a state "civil proceeding[ ] involving

certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial

functions."  (Doc. No. 20 at 11 (quoting *Hamilton v. Bromley*, 862 F.3d 329, 332 (3d Cir. 2017));

Doc. No. 25 at 14–15.)

    This argument fails for two reasons.  First there is no *pending* parallel state court

proceeding.  *See PDX N., Inc.*, 978 F.3d at 882 ("The trial court correctly dismissed PDX's case

but erred in dismissing SLS's case because, for SLS, there was no ongoing judicial

proceeding."); *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 463–64 (3d Cir. 2019) ("That

Malhan's garnishment proceeding is merely threatened—not 'pending'—makes abstention

---

[11] The District Attorney suggests the first category may also apply in this case, citing a federal court's limited ability to "restrain a criminal prosecution."  (Doc. No. 25 at 14 (quotation marks omitted); *id.* (referring to "cases involving efforts to enjoin state-level criminal law enforcement").)  But at this stage there is no pending criminal case in state court.  Nor is there a pending state civil enforcement proceeding of a "quasi-criminal" nature, which would trigger *Younger*'s second category.  *See ACRA Turf Club, LLC*, 748 F.3d at 138 (describing second category).

'clearly erroneous.'" (citations omitted)); *cf. Younger*, 401 U.S. at 41 ("We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun."). At most, a state administrative proceeding is *available*—Plaintiff could seek authorization from the Commission to disclose the misconduct complaint and the Department's disposition, and if denied, seek review from the state courts. He has not done so. The mere filing of an educator misconduct complaint did not initiate any type of proceeding as to the confidentiality issue, which requires a separate request on a collateral concern before a different administrative body. *See* 24 Pa. Cons. Stat. § 2070.17b(e).[12]

Second, even if an administrative proceeding were pending before the Commission, *Younger* abstention would still be inappropriate because such an action is not an "order[ ] . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." The Supreme Court discussed this exception in *Pennzoil Co. v. Texaco, Inc.* In that case, Texaco had lost to Pennzoil in a prior state court civil action, resulting in a $10.53 billion judgment against it

---

[12] During oral argument, the District Attorney argued that the Court should apply the factor test outlined in *Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo* to find that the availability of a proceeding before the Commission is sufficient to trigger *Younger*. *See* 339 F. App'x 232, 236 (3d Cir. 2009) ("*Younger* abstention is appropriate when (1) there is a pending state proceeding that is judicial in nature, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceeding for the plaintiff to raise its constitutional challenges.") (citing *Middlesex County Ethics Commission v. Garden State Bar. Ass'n*, 457 U.S. 423, 431 (1982)). Applying the *Middlesex* factors, the court in *Ocean Grove* found abstention appropriate when there was a pending complaint before a state administrative body, the New Jersey Division on Civil Rights ("DCR"). *Id.* at 235 (explaining that the plaintiff sought to "enjoin the DCR from continuing its investigation arising out of the two discrimination complaints"). But all parties agree that here, unlike in *Ocean Grove*, no proceeding is currently pending before the Commission. And, more importantly, Defendants' argument ignores the Supreme Court's more recent holding in *Spring Communications, Inc. v. Jacobs*, which states that the *Middlesex* factors are not dispositive, and instead, represent "additional factors appropriately considered by the federal court before invoking *Younger*" when there is a pending quasi-criminal case in state court. 571 U.S. at 81–82 ("[W]e today clarify and affirm that *Younger* extends to the three 'exceptional circumstances' identified in *NOPSI* but no further.").

in Texas state court.  481 U.S. 1, 4 (1987).  Under state law, a judgment creditor could secure and execute a lien on a judgment debtor's property unless the debtor filed a bond in at least the amount of the judgment, interest, and costs.  *Id.*  Unable to post a bond in the necessary amount, the verdict against Texaco would have resulted in a lien on its property, which would have substantially impaired its business operations.  *Id.* at 4–5.  Accordingly, Texaco filed a federal action, seeking an injunction that would prohibit Pennzoil from enforcing the state judgment by seeking a lien from the state court.  *Id.* at 6.  The federal district and circuit courts found *Younger* abstention inappropriate and granted injunctive relief.  *Id.* at 9.  The Supreme Court reversed.  *Id.*

The Supreme Court held that a federal court should abstain from deciding cases, like the one before it, which would result in "unprecedent intrusion into the [state] judicial system."  *Id.* at 10.  Recognizing the "importance to the States of enforcing the orders and judgments of their courts," the Supreme Court counseled that a federal court must "stay its hand," when the federal action challenges "the very process by which those judgments were obtained."  *Id.*  at 13–14; *see also Juidice v. Vail*, 430 U.S. 327, 335–36 (1977) (finding abstention appropriate in federal case challenging a state court order directing arrest and confinement of the plaintiff as a penalty for contempt of court because "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system . . . is surely an important interest" warranting abstention under the *Younger* doctrine); *id.* at 335 ("The contempt power lies at the core of the administration of the State's judicial system . . . .").

Unlike the judgment lien and contempt orders at issue in *Pennzoil* and *Juidice*, here Plaintiff does not challenge a state court order.  *See Malhan*, 938 F.3d at 463 (finding "abstention is plainly inappropriate" in case challenging the "administrative collection of non-final money judgments" which did not "challenge any judicial order at all" but instead "challenge[d]

executive actions (bank levies) that have a layer of family court review").  In addition, the confidentiality required by § 2070.17b(a) and the process for challenging that confidentiality established by § 2070.17b(e) have nothing to do with a state court's ability to enforce orders and judgments issued in cases before it.  *See Smith & Wesson Brands, Inc. v. Atty. Gen. of N.J.*, 27 F.4th 886, 894 (3d Cir. 2022) ("The key thread linking *Juidice* and *Pennzoil* is the certainty of the state court's action. . . .  In both cases, the substantive outcome had occurred; only enforcement remained, and the Supreme Court refused to impede that enforcement.").  Instead, those provisions require complainants to maintain the confidentiality of an administrative complaint and the disposition of that complaint by an administrative body, unless their disclosure is authorized by a separate administrative commission.  In short, there is nothing that suggests these provisions "touch on a state court's ability to perform its judicial function." *Sprint Comm'cs, Inc.*, 571 U.S. at 79 (holding that the "third [*Younger*] categor[y] plainly do[es] not accommodate" a state court civil action seeking review of an administrative decision).  *But cf. Jenkins v. McHaney*, Case No. 22-cv-2128-DWD, 2023 WL 3320147, at *7 (S.D. Ill. May 9, 2023) ("Here, resolving Jenkins' claims challenging the *confidentiality findings* in his *ongoing State-Court case* would interfere with the Illinois court's administration of its duties, providing an additional reason for finding that this case falls within the third category of exceptional circumstances identified in *Sprint*." (emphases added)).

For those reasons, the Court declines to abstain under *Younger*.

### 2. *Pullman* **Abstention**

In the alternative, the District Attorney argues that this Court should abstain from ruling on the Act's constitutionality under the *Pullman* doctrine.  (Doc. No. 20 at 12–15; Doc. No. 25 at 15.)  In *Railroad Commission of Texas v. Pullman, Co.*, the plaintiffs challenged the constitutionality of an administrative order issued by the Texas Railroad Commission.  312 U.S.

496, 497–98 (1941).  A three-judge panel of federal district court judges enjoined enforcement of

the order, and the Supreme Court reversed.  *Id.* at 498, 501–02.  The Supreme Court emphasized

that there was an open question as to whether the railroad commission had the authority under

state law to issue the order.  *Id.* at 501.  If a state court answered that question in the negative, it

would end the litigation and the constitutional issue would not need to be decided.  *Id.* at 501 ("If

there was no warrant in state law for the Commission's assumption of authority there is an end of

the litigation; the constitutional issue does not arise.").  Given that potential result, and the open

state law question as to the scope of the commission's authority under the statute, the Court held

that the lower court should have "stay[ed] its hands" and abstained from ruling until the state law

issue was resolved.  *Id.*

     In the more than 80 years since *Pullman*, the Supreme Court and Third Circuit have

described this abstention doctrine as applying "in cases presenting a federal constitutional issue

which might be mooted or presented in a different posture by a state court determination of

pertinent state law."  *Colorado River*, 424 U.S. at 814; *see also Presbytery of N.J. of the

Orthodox Presbyterian Church v. Whitman*, 99 F.3d 101, 106 (3d Cir. 1996) ("*Pullman*

abstention may be employed 'when a federal court is presented with both a federal constitutional

issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal

constitutional question thus avoiding needless friction with state policies.'" (quoting *Chez Sez III

Corp.*, 945 F.2d at 631) (cleaned up)).

     Before a court can abstain under *Pullman*, it must find that the case involves "the

following special circumstances: (1) uncertain issues of state law underlying the federal

constitutional claim; (2) state law issues subject to state court interpretation that could obviate

the need to adjudicate or substantially narrow the scope of the federal constitutional claim; and

(3) an erroneous construction of state law by the federal court would disrupt important state policies." *Presbytery*, 99 F.3d at 106; *accord Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149–50 (3d Cir. 2000).  If those three "special circumstances" are present, the district court "make[s] a discretionary determination as to whether abstention is appropriate under the circumstances, based on certain equitable considerations." *Id.* (quotation marks omitted).  In exercising its discretion, the court considers "such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Planned Parenthood of Cent. N.J.*, 220 F.3d at 150 (quotation marks omitted).

The District Attorney argues that the three conditions for *Pullman* abstention are satisfied in this case.  (Doc. No. 20 at 12–15; Doc. No. 25 at 15.)  Because we find the first special consideration lacking, the Court need not consider the remaining two conditions or the discretionary factors.

As to the first factor, the District Attorney argues that there are "clearly uncertain issues of state law underlying Plaintiff's federal claims, namely, statutory construction and application of constitutional interests."  (Doc. No. 20 at 15; Doc. No. 25 at 15.)  Although the District Attorney describes the "uncertain issues of state law" as "clear[ ]," (*see id.*), he provides no examples or discussion about the different ways a court might interpret the Act's confidentiality and enforcement provisions, both of which appear unambiguous on their face.  The Act defines "confidential information" as including "all information relating to any complaints or any proceedings relating to or resulting from such complaints, including the complainant."  24 Pa. Cons. Stat. § 2070.17b(a).  And it criminalizes disclosure of that information:  "Any person who releases or gives out information deemed confidential under this act, without authorization of the commission or as authorized by this [A]ct, commits a misdemeanor of the third degree." *Id.*

§ 2070.17(b).  There is no dispute that the Act's confidentiality provision encompasses the information that Plaintiff wishes to publicize or that he would be subject to criminal sanctions if he did publicize it.

The District Attorney also suggests that the "uncertain issue of state law" is whether the Commission would authorize Plaintiff to disclose the fact that he filed a misconduct complaint and the Department's disposition.  The District Attorney reasons that if Plaintiff sought authorization from the Commission and the Commission granted Plaintiff's petition, his as-applied claim in this case would be moot.  But this confuses abstention with exhaustion. *Pullman* abstention is a limited doctrine, under which a federal court delays considering a federal constitutional question because there is an uncertainty as to the state law's meaning or scope. *See Presbytery*, 99 F.3d at 106.  For reasons of federalism and comity, the district court withholds judgment until after the state court has had an opportunity to interpret the state or local law at issue.  *See, e.g.*, *Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476, 483 (W.D. Pa. 2020) ("[T]he Court is persuaded that the important principles underlying the *Pullman* abstention doctrine—federalism, comity, constitutional avoidance, error prevention, and judicial efficiency—all weigh strongly in favor of letting state courts decide predicate disputes about the meaning of Pennsylvania's state election code.").  The District Attorney has not cited, and this Court has not found, any cases that suggest *Pullman* abstention imposes an administrative exhaustion requirement on § 1983 claimants simply because a one-off administrative ruling could exempt a particular plaintiff from a state law's clear prohibitions.[13]  Indeed, to hold as

---

[13] Even if the Court were to find abstention appropriate on Plaintiff's as-applied challenge—because the Commission, upon petition, could choose to allow Plaintiff to disclose the information surrounding his educator misconduct complaint, thus, mooting the as-applied claim—abstention would remain inappropriate in connection with Plaintiff's facial challenge.  *See City of Houston v. Hill*, 482 U.S. 451, 467–68 (1987) (explaining that the Supreme Court has "been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment," recognizing that forcing a plaintiff "who has

much would seem to go against the Supreme Court's numerous holdings that exhaustion is not a prerequisite to bringing a civil rights action. *See supra* Part III.B.3.

Because § 2070.17(a), (b) is unambiguous, *Pullman* abstention is inappropriate, and it is immaterial that the Pennsylvania Supreme Court has yet to interpret that section.[14] *See City of Houston*, 482 U.S. at 468 (explaining that if the state statute "is not obviously susceptible of a limiting construction, then even if the statute has never been interpreted by a state tribunal it is the duty of the federal court to exercise its properly invoked jurisdiction" (quotation marks omitted)); *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971) ("Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim."); *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 632 (3d Cir. 1991) ("For *Pullman* to apply, the state or local law underlying the federal constitutional issue must be uncertain.").

For those reasons, the Court declines to abstain under *Pullman*.

---

commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect" (quotation marks omitted)); *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 902 F. Supp. 492, 515 (D.N.J. 1995) ("Distinguishing between facial and as applied challenges makes sense under the Third Circuit's two-step *Pullman* analysis. If a statute is justifiably attacked on its face, then it is not susceptible to a limiting construction that would eliminate or alter the federal constitutional question presented, and thus the first 'special circumstance' criterion for *Pullman* abstention is not met. Furthermore, if the challenged statute is in fact invalid on its face, then the delay resulting from a decision to abstain would cause an extremely harmful chilling effect, a discretionary consideration that would weigh strongly in favor of immediate judicial intervention." (citations omitted)).

[14] To the extent the District Attorney argues that the federal constitutional question should be submitted to the Pennsylvania Supreme Court for interpretation in the first instance, that is not the purpose of *Pullman* abstention. *See San Remo Hotel, L.P. v. City of San Francisco*, 545 U.S. 323, 339–40 (2005) ("[T]he purpose of [*Pullman*] abstention is not to afford state courts an opportunity to adjudicate an issue that is functionally identical to the federal question. To the contrary, the purpose of *Pullman* abstention in such cases is to avoid resolving the federal question by encouraging a state-law determination that may moot the federal controversy.").

### D.     Constitutionality

Having resolved the preliminary questions in Plaintiff's favor as against the District Attorney**,** the Court addresses the Act's constitutionality.  Plaintiff argues that the Act's confidentiality requirement is unconstitutional as applied to him because it is a content based restriction on speech that does not satisfy strict scrutiny.  (Doc. No. 9 at 13–17.)  The District Attorney counters that the Act passes muster under the First Amendment because it is a content neutral provision that survives intermediate scrutiny.  (Doc. No. 20 at 19–23; Doc. No. 25 at 15.) The Court agrees with Plaintiff that the Act imposes a content based restriction that cannot survive strict scrutiny.[15]

### 1.     <u>Content Based Restriction</u>

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. Const. amend. I).  Under that Amendment, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Id.* (quotation marks omitted).  "Content-based laws are 'those that target

---

[15] Because the Court finds the Act unconstitutional as applied to Plaintiff under a strict scrutiny analysis, we need not address Plaintiff's argument that it is unconstitutional under the test outlined by the Supreme Court in *Daily Mail* (*see* Doc. No. 24-1 at 21–23), nor do we consider Plaintiff's facial overbreadth challenge (*see id.* at 23–25).  *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989) ("It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied."); *Jacobsen v. Howard*, 109 F.3d 1268, 1274 (8th Cir. 1997) ("Because we conclude that the statutes are invalid as applied, it is appropriate that we not consider the overbreadth issue.  Similarly, the district court should have first considered the validity of the statutes as applied instead of reaching the overbreadth question in the first instance.  Had the district court done so, it also would have found it unnecessary to consider the overbreadth issue.  Accordingly, we must vacate that portion of the district court's opinion and judgment that holds the statutes overbroad."); *cf. Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, ("[T]he issue under the overbreadth doctrine is whether a government restriction of speech *that is arguably valid as applied to the case at hand* should nevertheless be invalidated to avoid the substantial prospect of unconstitutional application elsewhere." (quotation marks omitted) (emphasis added)).

speech based on its communicative content.'" *Schrader*, 74 F.4th at 126 (quoting *Reed*, 576 U.S. at 163). They are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. Plaintiff argues that the confidentiality requirement is a content based restriction, and therefore, strict scrutiny applies. The District Attorney disagrees.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. To determine whether § 2070.17b is content based, we must consider whether the statute "on its face draws distinctions based on the message a speaker conveys." *Id.* The confidentiality provision does just that. The provision prohibits the disclosure of "all information relating to any complaints or any proceeding relating or resulting from such complaints, including the identity of the complainant, unless or until discipline is imposed." 24 Pa. Cons. Stat. § 2070.17b(a); *accord* 22 Pa. Code § 233.114(a). In other words, complainants, like Plaintiff, are prohibited from disclosing the fact that a complaint was filed and the disposition of a complaint that does not result in discipline.

Courts have found that similar provisions are content based and subject to strict scrutiny. *See Stilp*, 613 F.3d at 409 (reviewing the Ethics Act's confidentiality provision, which "prohibit[s] public disclosure of the fact that an Ethics Act complaint was filed," under strict scrutiny); *Tschida v. Motl*, 924 F.3d 1297, 1303 (9th Cir. 2019) (finding confidentiality requirement in Montana's ethics law was content based and subject to strict scrutiny); *Kamasinski v. Judicial Review Council*, 44 F.3d 106, 109 (2d Cir. 1994) (finding confidentiality requirement in Connecticut's judicial misconduct law was content based and subject to strict scrutiny); *cf. Cooper v. Dillon*, 403 F.3d 1208, 1216 (11th Cir. 2005) ("[T]he statute is content-

based because the purpose of the statute is to stifle speech of a particular content, namely, speech regarding pending investigations of law enforcement officers.").

And as relevant to Plaintiff's challenge, the Act differentiates between disclosure of complaints resulting in discipline, and those that do not.  If a complaint results in discipline, confidentiality is, in most cases, lifted and all information regarding the complaint and its disposition are free to be disclosed.  *See* 24 Pa. Cons. Stat. § 2070.17b(a) ("[A]ll information relating to any complaints or any proceedings relating to or resulting from such complaints, including the identity of the complainant, shall remain confidential, *unless or until discipline is imposed* . . . .  All records pertaining to proceedings resulting in public discipline, excluding those records that are privileged or otherwise protected from release, shall become public after the exhaustion of all appeals except where the commission has determined that immediate discipline is necessary.  Records pertaining to immediate discipline proceedings are public at the time that the immediate discipline is imposed.").  When discipline is not imposed, however, an individual wishing to speak about a misconduct complaint is typically limited to information previously known and information for which the Commission authorizes disclosure.  That means that if a complainant, like Plaintiff here, wishes to criticize the Department or the Commission for *refusing to impose discipline* in connection with a misconduct complaint, he or she may do so only if the Commission authorizes disclosure.  This distinction between disclosure of claims where the Commission imposes discipline and disclosure of claims where it does not, suggests the Act's confidentiality provision is at least in part content based.  *See Reed*, 576 U.S. at 169 ("The Town's Sign Code likewise singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter.  Ideological messages are given more favorable treatment than messages concerning a political candidate, which are themselves

given more favorable treatment than messages announcing an assembly of like-minded individuals.  That is a paradigmatic example of content-based discrimination.").

The District Attorney, pointing to the provision allowing disclosure of information previously known, argues that the statute is content neutral because "its purpose is not to restrict any type of message, but rather to protect the privacy of vulnerable students and teachers engaged in a confidential administrative process."  (Doc. No. 20 at 20.)  He reasons that the "focus of the statute is not on *what* is being said, but rather from *where* the speaker obtained the information," and therefore, the confidentiality provision "serves purposes unrelated to the content of the expression" (i.e., preserving the confidentiality of information about teachers and students disclosed during the administrative process) and the "proper standard is intermediate scrutiny."  (*Id.* at 19–20; Doc. No. 29 at 8.)

This argument fails for two reasons.  First, the District Attorney fails to fully grapple with Plaintiff's as-applied challenge.  Here, Plaintiff wishes to disclose the fact that he filed a misconduct complaint and that the Department refused to take further action in connection with that complaint.  (Doc. No. 23 at ¶¶ 11–12.)  All parties agree that Plaintiff could lawfully disclose the underlying conduct by the school employee, which was previously known by him and was not learned solely through the investigative process.[16]

Second, the District Attorney's argument, which focuses on the purpose of the confidentiality requirement, asks the Court to skip the first step of the analysis—whether the law is content neutral on its face.  *See Reed* 576 U.S. at 166 (explaining that the court must consider "whether a law is content neutral on its face *before* turning to the law's justification or purpose").

---

[16] Because Plaintiff's challenge is limited in this way, the Court does not address whether the Commonwealth could constitutionally foreclose an individual from revealing information about complainants, educators, and minors learned solely through the administrative process.

"A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Reed* 576 U.S. at 165 (quotation marks omitted); *see also id.* at 164–65 ("On its face, the Sign Code is a content-based regulation of speech.  We thus have no need to consider the government's justifications or purposes for enacting the Code to determine whether it is subject to strict scrutiny.").[17]  The confidentiality provision is content based on its face—distinguishing between investigations that result in discipline and those that do not—so we need not consider the Act's purpose.

Because the statute imposes a content based restriction on speech, it is subject to strict scrutiny.

### 2.      Strict Scrutiny

"To survive strict scrutiny analysis, a statute must:  (1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." *Stilp*, 613 F.3d at 409 (quoting *ACLU v. Muaksey*, 534, F.3d 181, 190 (3d Cir. 2008)).  Here, the only government interest identified is "the privacy of students and teachers involved in a confidential administrative process."  (Doc. No. 20 at 19–23; Doc. No. 25

---

[17] The District Attorney relies on the Supreme Court's opinion in *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), for the proposition that "the 'government's purpose' for adopting the regulation represents 'the principal inquiry' in discerning content-neutrality."  (Doc. No. 20 at 19.)  But in *Reed*, the Court rejected a similar reading of *Ward*:

> The Court of Appeals and the United States misunderstand our decision in *Ward* as suggesting that a government's purpose is relevant even when a law is content based on its face.  That is incorrect.  *Ward* had nothing to say about facially content-based restrictions because it involved a facially content-*neutral* ban on the use, in a city-owned music venue, of sound amplification systems not provided by the city . . . .  *Ward*'s framework "applies only if a statute is content neutral."

*Reed*, 576 U.S. at 166–67 (quoting *Hill v. Colorado*, 530 U.S. 703, 766 (2015)).

at 15).  The parties dispute whether this interest is "compelling."  Plaintiff, citing prior cases

involving elected public officials, argues that the government does not have a compelling interest

in protecting the professional reputation of public educators.  *See Landmark Commc'ns, Inc.*, 435

U.S. at 841–42 ("Our prior cases have firmly established . . . that injury to official representation

is an insufficient reason for repressing speech that would otherwise be free." (quotation marks

omitted)); *Stilp*, 743 F. Supp. 2d at 469 ("The Commission's interest in protecting public

officials' reputations is an insufficient basis of § 1108k's blanket prohibition" on disclosure of

"any information relating to a complaint . . . before the commission.").  During oral argument,

the District Attorney argued these cases are inapposite because here, the confidentiality

requirement protects the identities of unelected public educators and minors.  *See The Fla. Star v.*

*B.J.F.*, 491 U.S. 524, 533 (1989) (recognizing that the "privacy rights" of private individuals are

"plainly rooted in the traditions and significant concerns of our society" (quotation marks

omitted).  This dispute is largely immaterial, however, because even if the Court assumes that the

government has identified a compelling interest protected by the Act's confidentiality

requirement, the statute is not narrowly tailored to protect the privacy of educators and minors,

nor is it the least restrictive means of advancing those interests.

        To the contrary, the Act appears both over and under inclusive for protecting the

identities of the individuals involved in the administrative process.  It is overinclusive because it

does not merely limit the release of names, but instead, broadly prohibits disclosure of any

information related to the filing of a complaint.  *See Tschida v. Motl*, 924 F.3d 1297, 1304–05

(9th Cir. 2019) (striking down confidentiality provision which prohibited "public disclosure of

an ethics complaint lodged with Montana's Commission of Political Practices" until the

commission dismissed the complaint or allowed it to proceed to a hearing because it was

"overbroad in that it prohibits revealing an ethics complaint in its entirety, irrespective of its content.  There is no attempt in the provision to distinguish between the constitutionally protected personal information and information that may be revealed without violating the Constitution").

And the Act is underinclusive because in most circumstances when discipline is imposed, the Act allows educators' and students' identities to be released.  The District Attorney has not explained why the privacy interests of educators and students—particularly the Commonwealth's interest in protecting the identities of minors—are of less importance if discipline is imposed.  Likewise, the Act allows the disclosure of facts underlying a misconduct complaint, including the identities of educators and students, when those facts are independently known.  *See Tschida*, 924 F.3d at 1305 (finding that "[s]evere underinclusiveness renders the confidentiality provision unconstitutional" where the provision "protects [the employees'] private information for a very limited time," noting that "while the complaint itself may not be revealed, the confidentiality provision allows a complainant to discuss the facts (or alleged facts) contained in the ethics complaint at any time . . . includ[ing] discussion of any private information in the complaint").[18]

Given these inconsistencies, the District Attorney has not shown that the Act is narrowly tailored to protect the identities of educators and minors involved in the administrative process.  *Cf. Stilp*, 613 F.3d at 409 (holding that the Ethics Act's confidentiality provision, which

---

[18] The District Attorney, in cursory fashion, also suggests that the Commonwealth has an interest in protecting the confidentiality of the process because "[w]ithout the presumption that the process will be conducted in a confidential manner, witnesses—many of whom are children—will be reluctant to participate, thwarting the process."  (Doc. No. 20 at 21.)  But again, the issue here is whether Plaintiff can release the fact that he filed a misconduct complaint and the disposition of that complaint.  This case does not involve the release of confidential information before disposition, and thus, does not implicate whether the investigative "process will be conducted in a confidential manner."  And to the extent the District Attorney is arguing that witnesses, including minors, will be reluctant to participate in the process if their names are disclosed after the process is completed—the Act already allows for that disclosure in most instances once discipline is imposed.

"prohibit[s] public disclosure of the fact that an Ethics Act complaint was filed, does not survive strict scrutiny and cannot be enforced.  A blanket prohibition on disclosure of a filed complaint stifles political speech near the core of the First Amendment and impairs the public's ability to evaluate whether the Ethics Commission is properly fulfilling its statutory mission to investigate alleged violations of the Ethics Act").

 In addition to failing to show that the Act is narrowly tailored, the District Attorney has not shown that criminal sanctions represent the "the least restrictive means among available, effective alternatives" for protecting the privacy of educators and students.  *Schrader*, 74 F.4th at 127 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)).  The Third Circuit in *Schrader*, analyzing a similar statute, found civil penalties represented at least one available alternative to criminal prosecution.  *See id.* (finding a law that authorized criminal sanctions following disclosure of documents was not narrowly tailored because "civil penalties" represented an "available, effective alternative[ ] to prosecuting Schrader").  And as in that case, here, the District Attorney "has offered little more than assertion and conjecture to support his claim that without criminal sanctions the objectives of the Law would be seriously undermined."  *Id.* (quotation marks omitted); *cf. Cooper*, 403 F.3d at 1218 ("Supreme Court precedent has confirmed that interests in privacy are insufficient to support criminal sanctions for the publication of lawfully obtained information." (collecting cases)).

 Because the Act does not satisfy strict scrutiny, it is unconstitutional as applied to Plaintiff, and the District Attorney "may not apply it to stop or punish [Plaintiff] for publishing" the fact that he filed a misconduct complaint and the Department's disposition of that complaint.  *Schrader*, 74 F.4th at 127.  Accordingly, the Court considers whether a permanent injunction is an appropriate means of remedying the constitutional violation.

E.       **Permanent Injunction**

"Before a court may grant a permanent injunction, the plaintiff must satisfy a four-factor

test":

> A plaintiff must demonstrate: (1) that it has suffered an irreparable
> injury; (2) that remedies available at law, such as monetary
> damages, are inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and (4) that the public
> interest would not be disserved by a permanent injunction.

*Stilp*, 743 F. Supp. 2d at 466 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391

(2006)).  Plaintiff satisfies those factors here.

1.       <u>**Irreparable Harm**</u>

"When a request for injunctive relief is based on a First Amendment challenge, the first

prong of the injunctive relief analysis is the most significant and is essentially a determination of

whether a constitutional violation has occurred."  *Id.*  That factor is satisfied here because, as

discussed above, the confidentiality provision violates the First Amendment as applied to

Plaintiff.  *See id.* ("This Circuit recognizes that the violation of a fundamental right, such as

one's First Amendment freedoms, 'for even minimal periods of time unquestionably constitutes

irreparable injury.'" (quoting *Swartzwelder v. McNeilly*, 297 F.3d 228, 241 (3d Cir. 2002))).

The Court rejects the District Attorney's suggestion that Plaintiff "is not suffering from

an irreparable harm" because he could "talk[ ] about his first-hand knowledge."  (Doc. No. 28 at

12–13.)  Plaintiff does not challenge his ability to discuss the facts underlying his misconduct

complaint, and instead challenges the Act to the extent it prohibits him from discussing the fact

that the filed a misconduct complaint in connection with those facts and the Department's

resolution of that complaint.  Because that prohibition violates the First Amendment as applied

to him, *see supra* Part III.D., Plaintiff has suffered an irreparable harm, *see Stilp*, 743 F. Supp. 2d

at 466.

The District Attorney also confusingly argues that Plaintiff cannot have suffered irreparable harm because the claims "in his Complaint to this Court and his educator misconduct complaint[,] are speculative and hypothetical."  (Doc. No. 28 at 12.)  On this issue, the District Attorney focuses on the injury that Plaintiff alleged that he suffered at the hands of the school employee *in the educator misconduct complaint*.  (*Id.*)  But this also misses the mark.  The facts of Plaintiff's misconduct complaint are largely immaterial to the analysis, just as it is immaterial whether the Department appropriately dismissed the misconduct complaint.  Here, the Court is concerned only with whether Plaintiff has a First Amendment right to discuss that disposition.  Because he does, and because the confidentiality requirement violates that right, he has suffered irreparable harm.  *See Stilp*, 743 F. Supp. 2d at 466.

### 2.    Inadequacy of Legal Remedies

The second factor—the inadequacy of legal remedies—also supports entry of a permanent injunction:  "Money damages are insufficient to cure the First Amendment violation in this case; an equitable remedy is appropriate."  *Id.* at 470 (citing *Nat'l People's Action v. Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990)).  The District Attorney does not dispute that this factor supports an injunction.  (*See* Doc. No. 28 at 12.)

### 3.    Balance of Hardships

Third, a balance of the hardships shows that they weigh in favor of injunctive relief.  The District Attorney notes that disclosure of the complaint in this case would result in disclosure of "Plaintiff's identity, perhaps family members['] identities, Plaintiff's position in public life, school aged children, and a public school employee—who is not a party to the lawsuit."  (Doc. No. 28 at 12; *see also* Doc. No. 29 at 9 ("Plaintiff ignores the detrimental consequences of permitting the release of the confidential reports would have on the investigation and the names

of children and educators.").)  But as noted previously, Plaintiff could lawfully disclose that information under the Act because it was previously known to him.  Here, Plaintiff is concerned with his ability to disclose the fact that he filed a misconduct complaint and the Department's disposition.  The District Attorney has not shown that the identified privacy concerns outweigh the hardships that the Act imposes on Plaintiff's First Amendment rights.  *See Schrader*, 74 F.4th at 128 ("[P]rivacy concerns give way when balanced against the First Amendment interest in publishing matters of public importance." (cleaned up)); *Stilp*, 743 F. Supp. 2d at 470 ("[T]he hardships faced by plaintiff lie at the very core of those freedoms protected by the First Amendment.  Restrictions on speech are particularly burdensome." (citations omitted)).[19]

### 4.   Public Interest

Finally, the Court finds that the public interest weighs in favor of an injunction.  *See Stilp*, 743 F. Supp. 2d at 470–71 ("[I]t is incontrovertible that 'curtailing constitutionally protected speech will not advance the public interest.'" (quoting *ACLU v. Reno*, 217 F.3d 162, 180 (3d Cir. 2000), *vacated on other grounds sub nom.*, *Ashcroft v. ACLU*, 533 U.S. 973 (2001))).

## IV.   CONCLUSION

In sum, Plaintiff has standing to challenge the constitutionality of § 2070.17b(a), (b) of the Educator Discipline Act.  His claim is ripe, and abstention is not appropriate.  Because the Attorney General is immune from suit, her motion for summary judgment is granted, and

---

[19] During oral argument, the District Attorney argued that the balance of hardships weighs against an injunction because if the Court enjoins the Act's confidentiality requirements, it will permit every person who has ever been involved in a misconduct proceeding to disclose information learned during that process, which will, in turn, deter individuals from filing misconduct complaints in the future.  This argument is not availing in this case, however, because as discussed above, the Court's ruling is focused on Plaintiff's as-applied challenge, and thus, the injunction extends only to enforcement of the confidentiality provision as to him in connection with the subject misconduct complaint.

judgment is entered in her favor.  The District Attorney, however, is not immune from suit.

Section 2070.17b(a), (b) of the Act is an unconstitutional violation of Plaintiff's First

Amendment right to freedom of speech to the extent that it forbids Plaintiff from discussing the

fact that he filed a misconduct complaint and the Department's decision to not impose discipline.

Accordingly, the District Attorney's motion for summary judgment is denied, and Plaintiff's

motion for summary judgment is granted as against the District Attorney.  The District Attorney

is permanently enjoined from bringing criminal sanctions against Plaintiff for disclosing the fact

that he filed a misconduct complaint and the Department's decision to not impose discipline.

An appropriate order follows.