## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **JOHN DOE,** *a pseudonym,* | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-3252-KSM** |
| **JENNIFER SCHORN,** *District Attorney of Bucks County, in Her Official Capacity*, et al., | |
| Defendants. | |

### <u>MEMORANDUM</u>

**MARSTON, J.**                                         **March 25, 2024**

On August 23, 2023, Plaintiff John Doe filed this pre-enforcement action under 42 U.S.C.

§ 1983 against the Attorney General of Pennsylvania and the District Attorney of Bucks County

in their official capacities.  (Doc. No. 1.)  He challenged the confidentiality requirement in

Pennsylvania's Educator Discipline Act under the First and Fourteenth Amendments, arguing

that it is unconstitutional as applied to him and on its face.  (*Id.*)  On January 10, 2024, the Court

granted Plaintiffs' motion for summary judgment in part, granted the Attorney General's cross

motion, denied the District Attorney's cross motion, declared § 2070.17b(a), (b) of the Educator

Discipline Act unconstitutional as applied to Plaintiff in connection with his June 22, 2023

educator misconduct complaint, and permanently enjoined the District Attorney from bringing

criminal sanctions against Plaintiff for violations of § 2070.17b(a) in connection with that

misconduct complaint.  (*See* Doc. Nos. 41, 42.)  Plaintiff now moves for an award of attorneys'

fees and costs pursuant to 42 U.S.C. § 1988 against the District Attorney.  (Doc. No. 44.)  The

District Attorney opposes that motion to the extent Plaintiff seeks to recover attorneys' fees but

makes no objection to Plaintiffs' request for costs.  (Doc. No. 45.)  For the reasons discussed below, the motion is granted in part and denied in part.

## I.     LEGAL STANDARD

Section 1988 is a fee shifting statute, under which "the court, in its discretion, may allow the prevailing party" in a § 1983 action "a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  "[A]lthough § 1988(b) expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances."  *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (cleaned up). In determining whether a fee request is reasonable, courts use the "'lodestar' formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party seeking attorneys' fees bears the burden of showing that the claimed rates and hours expended are reasonable.  *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *United Sates ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) ("In a statutory fees case, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the hours worked and rates claimed." (cleaned up)).  "The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."  *United States ex rel. Palmer*, 897 F.3d at 138 (cleaned up).

## II.    DISCUSSION

There is no dispute that Plaintiff, who was granted summary judgment and received permanent injunctive relief as against the District Attorney, is a prevailing party for purposes of § 1988(b).  *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (explaining that a plaintiff is a

prevailing party when they "obtain an enforceable judgment against the defendant from whom fees are sought"); *Truesdell*, 290 F.3d at 163 ("[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (cleaned up)).  As such, he "should recover an award of attorney's fees absent special circumstances."  *Truesdell*, 290 F.3d at 163 (cleaned up).  Here, Plaintiff requests $63,820.87 in fees and $191.74 in costs incurred by his counsel, Attorney Aaron D. Martin, Attorney Sarah E. Straub, Law Clerk James A. Beebe, and support staff at the law firm of Mette, Evans & Woodside.  (Doc. No. 44.)

The District Attorney objects to Plaintiff's fee request, arguing that no attorneys' fees should be awarded in this case because an award would be counter to the purpose of § 1988 and because special circumstances warrant the denial of a fee award.  (Doc. No. 45-1 at 2–7.)  In the alternative, the District Attorney argues that if a fee award is warranted, the Court should reduce the amount of fees because the hourly rate requested and the hours expended by Attorney Martin are unreasonable.  (*Id.* at 7–11.)  The Court addresses each objection in turn.

### A.     Purpose of § 1988

First, the District Attorney argues that no fee award is warranted in this case because "[t]he clear aim of Section 1988 . . . is to allow recovery of fees where a party demonstrates *a violation* of their civil rights, and where the fees are recovered from the *party responsible for such violation.*"  (Doc. No. 45-1 at 3.)  She cites the Supreme Court's opinion in *Fox v. Vice* for the proposition that "[w]hen a plaintiff succeeds in remedying a civil rights violation, they may recover a reasonable attorney's fee from 'the party whose *misconduct* created the need for legal action.'"  (*Id.* at 2–3 (quoting *Fox*, 563 U.S. 826, 833 (2011)).)  And she reasons that because Plaintiff brought a pre-enforcement case, "the District Attorney took no action" against Plaintiff, and therefore, "did not violate Plaintiff's civil rights."  (*Id.* at 3.)  This argument misunderstands

the Supreme Court's discussion in *Fox*, runs counter to the primary purpose of § 1988, and is misapplied in the context of this case.

In *Fox*, the Supreme Court, relying on its prior precedent in *Christiansburg Garment Co. v. EEOC*, noted that in cases brought pursuant to § 1983, the prevailing plaintiff "serves as a private attorney general, vindicating a policy that Congress considered of the highest priority," and for that reason, the plaintiff "should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action." *Id.* (quotation marks omitted); *see also id.* ("Fee-shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights, and holds to account a violator of federal law." (cleaned up).) But neither *Fox* nor *Christiansburg* involved a pre-enforcement challenge. Indeed, neither case involved a *plaintiff's* request for fee shifting under § 1988. Instead, in both cases, the Court considered whether § 1988 supports an award of fees in favor of a prevailing *defendant*. *See id.* at 836 ("Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim. Or what is the same thing stated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim."); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) ("The question in the case before us is what standard should inform a district court's discretion in deciding whether to award attorney's fees *to a successful defendant* in a Title VII action." (emphasis added)). In answering that question, the Court discussed the policy reasons that support fee shifting in favor of a prevailing plaintiff and recognized that they are different from the policy reasons that could support fee shifting in favor of a prevailing *defendant*. *Christiansburg Garment Co.*, 434 U.S. at 418–19. Because neither *Fox* nor *Christiansburg* considered the appropriateness of fees in the pre-enforcement context, they offer little support for

4

the District Attorney's position that fee shifting is inappropriate when a § 1983 case is brought *before* the state actor can complete a violation of a plaintiff's constitutional rights.

Moreover, the District Attorney's position runs counter to the clear admonition from the Supreme Court, Third Circuit, and numerous other circuit courts that "a prevailing plaintiff *should* ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (emphasis added); *Truesdell*, 290 F.3d at 163; *see also, e.g.*, *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014) ("Although § 1988 uses permissive language regarding fee awards, the Supreme Court has read § 1988 as mandatory where the plaintiff prevails and special circumstances are absent." (cleaned up)); *Mendez v. County of San Bernardino*, 540 F.2d 1109, 1126 (9th Cir. 2008) ("A court's discretion to deny fees under § 1988 is very narrow and fee awards should be the rule rather than the exception." (quotation marks omitted)); *Williams v. Hanover Hous. Auth.*, 113 F.3d 1294, 1300 (1st Cir. 1997) ("While § 1988 provides that attorneys' fees may be granted to the prevailing party in the district court's discretion, both the legislative history and case law since enactment of § 1988 indicate that prevailing parties may not ordinarily be denied fees except in special circumstances making the award unjust."); *Espino v. Besteiro*, 708 F.2d 1002, 1005 (5th Cir. 1983) ("The discretion to deny § 1988 fees is . . . extremely narrow.  Absent special circumstances that would render such an award unjust, a prevailing plaintiff should be awarded § 1988 fees *as a matter of course*." (cleaned up)).

And although one purpose of § 1988's fee shifting provision may be (as the District Attorney asserts) to hold the "violator of a federal law" accountable, *Fox*, 563 U.S. at 833, courts are virtually unanimous in holding that the *primary* purpose of § 1988 is to encourage private enforcement of civil rights laws, *see, e.g.*, *Hensley*, 461 U.S. at 429 ("The purpose of § 1988 is to

5

ensure effective access to the judicial process for persons with civil rights grievances."); *Hescott*, 757 F.3d at 523 ("Congress enacted 42 U.S.C. § 1988 to encourage the private enforcement of civil rights."); *Mendez*, 540 F.3d at 1126 ("Congress' intent in enacting § 1988 was to attract competent counsel to prosecute civil rights cases, where 'victims ordinarily cannot afford to purchase legal services at the rates set by the private market.'" (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (plurality opinion.))); *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir. 1985) (*en banc*) ("A principal purpose of [§ 1988] is to encourage civil rights enforcement by plaintiffs acting as private attorneys general." (quotation marks omitted)). Disallowing fee awards in the pre-enforcement context would be counter to this purpose, as it could dissuade a civil rights plaintiff from filing suit at all.  For example, the Court can imagine a case where a plaintiff cannot shoulder the burden of attorney's fees and thus, does not bring a pre-enforcement challenge, but also is unwilling to risk criminal sanctions before challenging an otherwise unconstitutional law.

Last, we find somewhat disingenuous the District Attorney's suggestion that fees are unwarranted because she has not *yet* violated Plaintiff's constitutional rights.  Although the District Attorney did not prosecute or threaten to prosecute Plaintiff before he filed his Complaint, during the lawsuit, she refused to disavow an intent to prosecute if Plaintiff did violate the Discipline Act's confidentiality provisions.  (*See* Doc. No. 41 at 18 (finding at summary judgment that there was a "credible threat of enforcement" because the "District Attorney has not disavowed an intent to prosecute Plaintiff, nor is there any dispute that Plaintiff's intended conduct is prohibited by the Act")); *cf. Migliori*, 668 F. Supp. 3d at 349 ("The Board's reasoning impliedly concedes that Plaintiffs could not have possibly vindicated their rights without bringing suit, and the Court finds that a denial of attorney's fees would not be

appropriate for this reason.").[1]  Having found a "credible threat of enforcement" by the District Attorney and that such enforcement in this case would violate Plaintiff's First Amendment rights, the Court rejects the District Attorney's argument that fees are unwarranted because she had not yet done so.

Accordingly, the Court denies the District Attorney's objection to the fee award as contrary to the purpose of § 1988.

### B.    Special Circumstances

Second, and relatedly, the District Attorney argues that a fee award is inappropriate in this action because special circumstances render such an award unjust.  (Doc. No. 45-1 at 4–7.)  As stated above, "although § 1988(b) expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." *Truesdell*, 290 F.3d at 163 (cleaned up).  The Supreme Court has provided little guidance on what circumstances would render a fee award "unjust." *See Ward v. Phila. Parking Auth.*, 634 F. App'x 901, 906 (3d Cir. 2015) ("[T]he Supreme Court has offered little guidance as to what situations qualify."); *see also Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 422 (6th Cir. 2005) ("[L]ittle guidance has been provided by the Supreme Court as to precisely what constitutes a special circumstance that would defeat a fee award . . . .").  That said, the Third Circuit has emphasized that the "special circumstances" exception is "an extremely limited one that is applied only in unusual circumstances and then only upon a strong showing by the party asserting it." *Ashley v. Atl. Richfield Co.*, 794 F.2d 128,

---

[1] Although the District Attorney succeeded the former District Attorney toward the end of this case, and it was the former, not the current, District Attorney who refused to disavow an intent to prosecute, the Court's analysis remains the same.  What matters here is that the *Office of the District Attorney* refused to disavow any intent to prosecute throughout this case.

135 n.9 (3d Cir. 1986); *see also Ward*, 634 F. App'x at 906.[2]  "As a result, this exception is typically only applied by courts to eliminate fees in extraordinary cases where the plaintiff's non-meritorious claims or ill conduct over the course of the litigation have somehow rendered the fee award unjust."  *Migliori v. Lehigh Cnty. Bd. of Elections*, 668 F. Supp. 3d 337, 344 (E.D. Pa. 2023) (collecting cases from this Circuit).[3]

The District Attorney does not (and cannot) argue that Plaintiff's claims were "non-meritorious," nor does she argue that Plaintiff or Plaintiff's counsel engaged in misconduct during this litigation.  Instead, she argues that there are "special circumstances" in this case because her "involvement in this case is exclusively attributable to the office she holds."  (Doc. No. 45-1 at 6.)  In other words, she reasons that fee shifting is unjust because the "District Attorney is not responsible for the formation of the statute complained of and the District Attorney never acted or even threatened to enforce the statute in question."  (*Id.*)

---

[2] The District Attorney suggests the Court should apply the "special circumstances" test outlined by the Ninth Circuit in *Mendez v. County of San Bernardino*:  "[W]e evaluate whether special circumstances exist by asking whether '(1) allowing attorney's fees would further the purposes of § 1988 and (2) whether the balance of equities favors or disfavors the denial of fees.'"  (Doc. No. 45-1 at 5); *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008) (quoting *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005)).  The District Attorney has not shown that any court outside the Ninth Circuit has adopted this test, and to the contrary, she acknowledges that other Circuits, including the Sixth Circuit, have "opted for a case-by-case approach rather than adopting a pre-determined formula."  (Doc. No. 45-1 at 5); *Déjà vu*, 421 F.3d at 422.  In any event, even if the Court were to adopt the Ninth Circuit's test, we note that, as discussed *supra* Part II.A, rejecting fees here would not "further the purposes of § 1988."  And, as discussed below, we reject the District Attorney's assertion that the equities disfavor fees in this case because she only has limited enforcement authority in connection with the Educator Discipline Act.

[3] For example, courts have found "special circumstances" where the plaintiff or plaintiff's counsel engaged in "outrageous or inexcusable conduct" during the litigation, *Williams*, 113 F.3d at 1301 (quotation marks omitted), where the parties entered a nuisance settlement and plaintiff's claim "clearly appears to be legally or factually non-meritorious," *Ashley*, 794 F.2d at 134 n.9, where the plaintiff recovered "what was essentially a tort claim for private monetary damages" and which "did not require injunctive relief or confer significant civil rights to the public," *Grisham v. City of Fort Worth*, 837 F.3d 564, 568–69 (5th Cir. 2016), and where the plaintiff "received the benefits desired from their litigation," but "their efforts did not contribute to achieving those results," *id.* (quotation marks omitted); *see also Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir. 1976) (refusing to award attorney's fees where discriminatory acts ceased before plaintiffs filed suit).

But courts have consistently rejected the notion that a defendant avoids fee shifting simply because they were charged with enforcing an unconstitutional statute or regulation. *See Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 739 (1980) ("We are not convinced that it would be unfair to award fees against the State Bar, which by statute is designated as an administrative agency to help enforce the State Bar Code.  Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction."); *Migliori*, 668 F. Supp. 3d at 348–49 (rejecting the defendant's argument that special circumstances existed because the defendant "did not possess the unilateral ability and/or capacity to take any action to remedy the challenged action here" (quotation marks omitted)); *Finberg v. Sullivan*, 555 F. Supp. 1068, 1070 (E.D. Pa. 1982) ("That the sheriff and prothonotary were performing ministerial acts and had no authority to change the challenged rules does not compel a finding that the award of attorney's fees against these parties would be unjust."); *cf. Martin*, 773 F.2d at 1150 ("It is also not a special circumstance sufficient to preclude a fee award against the state defendant that the state merely acted pursuant to federal regulation.").

Likewise, it is immaterial that the District Attorney may have acted in good faith when she refused to disclaim an intent to prosecute under the Discipline Act. *See Hescott*, 757 F.3d at 526 ("We have held time and again that good faith is not a special circumstance which justifies the denial of attorney's fees under section 1988." (quotation marks omitted)); *Williams*, 113 F.3d at 1301 ("The circuits are in agreement . . . that defendants' good faith reliance even on settled law . . . is not a 'special circumstance' warranting a denial of attorneys' fees under § 1988."); *Lampher v. Zagel*, 755 F. 2d 99, 104 (7th Cir. 1985) ("[T]he good faith of the defendants is

irrelevant because the key issue is the provocative role of the plaintiffs' lawsuit, not the motivation of the defendant." (cleaned up)); *Martin*, 773 F.2d at 1150 ("Defendants' good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion."); *Espino*, 708 F.2d at 1005 ("Good faith is not a special circumstance sufficient to justify the denial of fees under § 1988."); *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 545 (5th Cir. 1980) ("State officials cannot show special circumstances sufficient to prevent an award of fees merely because the officials enforced the statute in good faith compliance with their official duty, or because any award of attorneys' fees would ultimately be satisfied by state taxpayers."); *Nadeau v. Helgemoe*, 581 F.2d 275, 280 (1st Cir. 1978) ("The good faith of defendants is not a controlling factor in determining whether or not plaintiffs merit an award . . . . The key issue is the provocative role of the plaintiff's lawsuit, not the motivations of the defendant."); *Chastang*, 541 F.2d at 1045 ("Of course, the Company's good faith alone would not insulate it from making plaintiffs whole . . . .").

Accordingly, the Court rejects the District Attorney's argument that special circumstances exist in this case which would render a fee award unjust.

## C.    Reasonable Fee

Having found Plaintiff is entitled to recover attorneys' fees, the Court turns to the reasonableness of the fees requested.  As stated above, in determining whether the fees requested are reasonable, courts use the "'lodestar' formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate."  *Maldonado*, 256 F.3d at 184; *see also Hensley*, 461 U.S. at 433.

### 1.    <u>Hourly Rate</u>

The Court begins with the reasonableness of the hourly rates for Plaintiff's counsel. Here, Plaintiff seeks to recover fees for Attorney Martin at an hourly rate of $792.50, for

Attorney Straub at an hourly rate of $260, for Law Clerk Beebe at an hourly rate of $190, and for support staff at an hourly rate of $190.  (Doc. No. 44 at 8–11.)  The District Attorney challenges only Mr. Martin's hourly rate.  (Doc. No. 45-1 at 9.)

"[A] reasonable hourly rate is calculated according to the prevailing market rates in the relevant community."  *Maldonado*, 256 F.3d at 184; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.").  "[T]he starting point . . . is the attorney's usual billing rate, but this is not dispositive."  *Maldonado*, 256 F.3d at 184 (cleaned up).  The court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* (cleaned up).  As the prevailing party, Plaintiff bears the burden of producing "'satisfactory evidence in addition to the attorney's own affidavits that the requested hourly rates . . . meet this standard."  *Id.*  In performing this analysis, courts in this Circuit also consider whether the requested hourly rate is in line with the Community Legal Services ("CLS") fee schedule.[4]  *See id.* at 187 (stating that the CLS fee schedule has been cited approvingly by the Third Circuit).

As discussed, Plaintiff seeks to recover for Mr. Martin's time at an hourly rate of $792.50.  (Doc. No. 44 at 6.)  At the time of this litigation, Mr. Martin had approximately 28 years' experience litigating cases in Pennsylvania, which included litigating similar First Amendment claims before Pennsylvania's federal district courts and the Third Circuit.  (Doc.

---

[4] The most recent version of this fee schedule, which was effective January 19, 2023, can be found here:  https://clsphila.org/about-community-legal-services/attorney-fees/.

No. 44-3); *see also Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120 (3d Cir. 2023) (litigated by Mr. Martin); *Doe v. Govr. of Pa.*, 790 F. App'x 398 (3d Cir. 2019) (same); *Stilp v. Contino*, 629 F. Supp. 2d 449 (M.D. Pa. 2009), *aff'd* 613 F.3d 405 (3d Cir. 2010) (same).  The CLS fee schedule lists the range of hourly rates for attorneys with more than 25 years' experience as $735 to $850, *see supra* n.4, so Mr. Martin's requested rate is consistent with the hourly rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Maldonado*, 256 F.3d at 184.  In addition, Mr. Martin has submitted the declaration of Samuel C. Stretton, an attorney who has litigated in Pennsylvania since December 1973, and who has known Mr. Martin for approximately 20 years.  (Doc. No. 44-7 at 1.)  Mr. Stretton avers that "[b]ased upon [his] familiarity with rates generally charged by litigators in southeastern Pennsylvania, and specifically matters heard in the U.S. District Court for the Eastern District of Pennsylvania in Philadelphia, it is [his] opinion that $792.50 is a reasonable hourly rate in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  (*Id.* at 2.)

The District Attorney argues that Mr. Martin's hourly rate is extraordinary and unjustified.  (Doc. No. 45-1 at 9.)  She does not dispute that it is supported by the CLS fee schedule and Mr. Stretton's declaration.  Instead, she points to a declaration that Mr. Martin submitted in *Schrader*, in which he averred that his "standard hourly rate for civil litigation is $450."  (Doc. No. 45-1 at 9; *see also* Doc. No. 45-3 at 3.)  Mr. Martin executed that declaration on August 14, 2023, just a few days before he filed the Complaint in this action.  (*See* Doc. No. 45-3 at 3.)  In addition, in support of Mr. Martin's fee request in *Schrader*, Mr. Stretton submitted a declaration, signed August 15, 2023, which averred, "[b]ased upon [his] familiarity with rates generally charged by litigators in cases in the Philadelphia vicinage, and specifically

appeals heard by the U.S. Court of Appeals for the Third Circuit, it is my opinion that $450 is a reasonable hourly rate for services performed by a civil litigator of Mr. Martin's skill, experience, and reputation."  (Doc. No. 45-4 at 3.)

Given these declarations, the Court agrees with the District Attorney that Plaintiff has failed to show an hourly rate of $792.50 for Mr. Martin is reasonable.  Although this rate falls within the CLS fee schedule for attorneys with similar experience, Mr. Martin has not shown that Plaintiff, or indeed, any other client, has agreed to pay him that hourly rate.  *See Ray v. AT&T Mobility Servs., LLC*, Civil Action No. 18-3303, 2022 WL 1203730, at *6 (E.D. Pa. Apr. 22, 2022) (noting that the plaintiff "fail[ed] to present any evidence showing that any client has willingly agreed to pay" the hourly rates sought); *Holt v. Pennsylvania*, Civil Action No. 10-5510, 2020 WL 2098103, at *14 (E.D. Pa. May 1, 2020) ("Plaintiff has not averred that Puricelli has actually billed any paying client at an hourly rate of $750 or that anyone, including any court authorizing an award in a fee-shifting case, has ever paid him that rate."); *Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 WL 936645, at *12 (E.D. Pa. Feb. 26, 2019) ("Returning to Microeconomics 101 in setting a reasonable market price, we may look to what a willing client would pay a willing lawyer.").  And although this fact, on its own, is not fatal to the requested rate, here, we also have a declaration that Mr. Martin executed just a few days before filing this lawsuit, which shows that the hourly rate that he charges clients is $450—a rate that is nearly half of the $792.50 per hour that he now seeks.  *Cf. Maldonado*, 256 F.3d at 184 ("Hours that would not generally be billed to one's own client are not properly billed to an adversary." (cleaned up)); *W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 365 (3d Cir. 1990) (reminding counsel "that members of the bar are officers of the court and that they should demonstrate the same level of billing judgment and sensitivity in fee shifting situations as they do with their own

private clients").  Mr. Martin has not claimed that his standard hourly rate changed in the five months that this litigation was ongoing, nor has he explained the discrepancies between the rate sought in this case and that sought in *Schrader*, a case with similar legal and factual issues.

Accordingly, the Court lowers Mr. Martin's hourly rate to $450.  Because the District Attorney does not challenge the hourly rates for Ms. Straub, Mr. Beebe, and the firm's support staff, the Court does not alter their requested rates.

### 2.   <u>Hours Expended</u>

Next, the Court considers whether Plaintiff has shown that the hours expended by his attorneys were reasonable.  "In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."  *Maldonado*, 256 F.3d at 184.  "Hours that would not generally be billed to one's own client are not properly billed to an adversary."  *Id.* (cleaned up).  Further, "[t]he fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees."  *Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995).

Plaintiff requests reimbursement for a total of 87.15 hours.[5]  (Doc. No. 44-2.)  He argues that this amount is reasonable, given that the litigation lasted only five months and "Attorney Martin was able to draw upon [his prior] subject matter experience in litigating the present case," which resulted in "a significant reduction in total time required for legal research in litigating this case."  (Doc. No. 44 at 8.)  Plaintiff emphasizes the "compressed time-frame" for the action,

---

[5] This number accounts for the reductions in hours discussed later in this paragraph.

noting that Mr. Martin "was able to work with opposing counsel and the Court to advance the case expeditiously toward final adjudication, avoiding the necessity both of formal discovery and trial to reach final adjudication upon stipulated facts." (*Id.* at 9.)  Finally, Plaintiff notes that the total hours sought reflects that Plaintiff has:  (1) deducted entirely the time attributable to litigating claims "against the Attorney General as opposed to the District Attorney," (2) reduced by 50% the time attributable to litigating issues that applied jointly to the claims against the Attorney General and the District Attorney, and (3) reduced by 50% the travel time on January 9, 2024, to reflect a one-half hourly rate for travel.  (*Id.* at 11.)

The District Attorney objects to the requested hours to the extent they bill for work performed for:  "[1] proceeding by way of pseudonym, [2] preparing and filing of a preliminary injunction (dismissed as moot Doc. 41, 42), [3] documents, filings and/or exhibits under seal, [4] 'rights of access,' [which relates to the motion to seal] and [5] prepar[ing] and fil[ing] this current motion for fees."  (Doc. No. 45-1 at 10.)  She argues in conclusory fashion that this time should be excluded because it seeks reimbursement for "hours spent litigating claims on which [Plaintiff] did not succeed and that were distinct in all respects from the claims on which [Plaintiff] did succeed" or "the hours are excessive, redundant, or otherwise unnecessary."  (*Id.* at 10–11 (quotation marks omitted)).  The Court disagrees.

First, of the challenged actions, the motion for preliminary injunction is the only one on which Plaintiff arguably did not succeed.  The Court denied that motion as moot after issuing a permanent injunction addressing the same conduct.  (*See* Doc. No. 42 at 2.)  But courts have repeatedly held that a plaintiff is entitled to recover fees incurred preparing motions which were ultimately denied.  *See Hensley*, 461 U.S. at 435 ("[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . .  Litigants in

good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."); *see also, e.g.*, *Gortat v. Capala Bros., Inc.*, 621 F. App'x 19, 23 (2d Cir. 2015) ("[T]here is no rule that Plaintiffs need [to] achieve total victory on every motion in pursuit of a successful claim in order to be compensated for the full number of hours spent litigating that claim."); *In re Gordon Props., LLC*, No. 09-18086-RGM, 2013 WL 5379828, at *3 (E.D. Va. Sept. 26, 2013) ("There is a distinction between succeeding on a claim and succeeding on every motion or action taken in prosecution or defense of a claim.  Gordon Properties may recover its attorney's fees for unsuccessful motions or actions when it is successful on the claim to which they apply, but not for any motion to action made or taken in an unsuccessful claim even if the motion or action was itself successful.").

Here, the fact that the Court chose to address this case on the merits at summary judgment and issue permanent injunctive relief does not mean that Plaintiff is not entitled to recover fees on the motion for preliminary injunctive relief.  In many respects, the parties' briefs at summary judgment relied on the preliminary injunction briefing, which suggests the efforts counsel put into the motion for preliminary injunction contributed to Plaintiff's ultimate success on the merits of his § 1983 claim and request for a permanent injunction.  (*See* Doc. No. 20 at 7; Doc. No. 25 at 15; Doc. No. 28 at 5; Doc. No. 29 at 4; Doc. No. 30 at 11 n.1); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS(JWJX), 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) ("[T]he Court finds that plaintiff is entitled to the attorneys' fees it incurred in its [unsuccessful] motion for a preliminary injunction and the related appeal because the Court ultimately issued a permanent injunction based on very similar arguments."); *Turley v. N.Y. City Police Dep't*, No. 93 CIV. 8748 (SAS),1998 WL 760243, at *2 (S.D.N.Y. Oct. 30,

1998) (adopting report and recommendation that "the hours spent on plaintiff's preliminary injunction motion should not be excluded" because "the issues which plaintiff initially raised in the preliminary injunction context remained central to the entire litigation" and "given the constancy of the issues, it is reasonable to conclude that the effort spent on the motion for a preliminary injunction saved attorney's hours at the later stages of the litigation").

Finally, the Court finds that it was not unreasonable for counsel to spend 12 hours researching and drafting the motion and briefs requesting a preliminary injunction and preparing for court conferences on that motion. *See, e.g.*, *Nature Conservancy, Inc. v. Sims*, No. CIV.A. 07-112-JMH, 2009 WL 2382378, at *2 (E.D. Ky. July 30, 2009) ("Nearly fifty-three hours were spent drafting and revising the Motion for Preliminary Injunction that was filed simultaneously with the Complaint. This time appears reasonable given the in-depth treatment of the issues presented in the twenty-eight page memorandum and twenty-one exhibits."). Accordingly, the Court declines to exclude hours that counsel spent litigating Plaintiff's motion for preliminary injunction.

That leaves the District Attorney's conclusory assertion that the fees sought are excessive, redundant, or unnecessary to the extent Plaintiff seeks to recover for work spent litigating the motion to proceed under pseudonym, the motion to seal, and the current fee petition. After a thorough review of counsels' time records, the Court does not find the challenged hours unnecessary or excessive. Beginning with the motions to proceed under pseudonym and to seal exhibits referencing the underlying disciplinary proceeding, we find that both motions were "useful and of a type ordinarily necessary" to advance this litigation. *Cf. Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 556 (1986) (referencing the Court's prior holdings that work performed for a state administrative hearing

may be compensable under § 1988 if it "was both useful and of a type ordinarily necessary to advance the litigation to the point where the party succeeded" (quotation marks omitted)). Because the Educator Discipline Act authorized criminal sanctions against Plaintiff if the sealed information, including his name, were publicly disclosed, the motions to proceed under pseudonym and to seal were "reasonably necessary" for Plaintiff to pursue this litigation which challenged those confidentiality provisions and sought an injunction allowing disclosure of that information. *See Hensley*, 461 U.S. at 434 (explaining that a fee award should include those hours "reasonably expended" on the litigation); *cf. Kennan v. City of Philadelphia*, 983 F.2d 459, 474 (3d Cir. 1992) (finding the district court did not abuse its discretion when awarding fees for time spent in related labor arbitration because "the arbitration matter was inextricably linked to the issues before the district court" (cleaned up)). Counsel spent a total of 18.15 hours researching and drafting the motion to proceed under pseudonym and the motion to seal. The Court finds this time reasonable.

In addition, the Court finds that, as the prevailing party, Plaintiff is entitled to recover fees for the time counsel spent working on the motion to recover attorneys' fees. *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002) ("A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application."); *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, (3d Cir. 1978) ("[T]he time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award."). Here, the 10.90 hours that counsel spent drafting this motion and the accompanying declarations and exhibits was not excessive. *See Nature Conservancy, Inc.*, 2009 WL 2382378, at *2 ("The nearly thirteen hours spent preparing the Motion for Attorneys Fees and Costs and twelve-page supporting memorandum also appears

reasonable.").

For those reasons, the Court rejects the District Attorney's objections to the hours expended by Plaintiff's counsel.

## III.    CONCLUSION

Plaintiffs' motion for attorney's fees against the District Attorney is granted in part and denied in part.  Mr. Martin's hourly rate is reduced from $792.50 to $450.00 for the reasons explained in this Memorandum.  Plaintiff is awarded $36,071.50 in attorneys' fees as reflected in the chart below:

| Name | Rate | Hours | Fees |
|------|------|-------|------|
| Aaron Martin | $450 | 75.05 | $33,772.50 |
| Sarah Straub | $260 | 0[6] | $0 |
| James Beebe | $190 | 11.6 | $2,204 |
| Support Staff | $190 | 0.5 | $95 |
| | | **Total** | **$36,071.50** |

Plaintiff is also awarded $192.94 in costs.  An appropriate order follows.

---

[6] Ms. Straub worked only on Plaintiff's opposition to the motion for summary judgment submitted by the Attorney General, and thus, her hours are discounted 100%.